C. F. Sentell, of Snyder, and T. L. Price, of Post, for appellant.

Spurgeon E. Bell, State's Atty., of Austin, for the State.

BEAUCHAMP, Judge

Willie Williams was charged with the theft of two white hogs from Aubrey Stokes and, upon conviction, was given three years in the penitentiary.

The owner of the hogs was engaged in buying and selling hogs and cattle and lived on the outskirts of the town of Snyder. Appellant lived nearby and, to a limited extent, engaged in the same business. The owner's pens became flooded and he turned his hogs out to range until the water from the creek went down. After about a week they disappeared and he finally learned that another hog buyer had bought them from appellant. When confronted with the charge appellant agreed to pay for the hogs, which he finally did, but not until the matter had been reported to the officers.

Appellant's only defense is that he bought the hogs for $7.50 from a negro boy who lived several miles away and who has a twin brother so much like him that appellant could not say which one he bought them from. The party was not called as a witness by either side and there is ample evidence and circumstances upon which the jury was justified in disregarding the story which appellant gave.

The record is before us without bills of exception. The procedure appears to be regular in every respect and the jury has decided the only question in the case.

The judgment of the trial court is affirmed.

## BROWN v. STATE.
### No. 21943.

Court of Criminal Appeals of Texas.
Feb. 18, 1942.

J. O. Ward, of Borger, for appellant.

Spurgeon E. Bell, State's Atty., of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of murder and his punishment was assessed at death.

It appears from the record that on the 19th day of April, 1941, the appellant was indicted by the grand jury of Hansford County, under the name of Robert Lawrence, charging him in one count with having unlawfully and with malice aforethought killed Leota Lawrence by striking her with a hammer; and in the second count with having unlawfully and with malice aforethought killed Leota Murphy by striking her with a hammer. The offense is alleged to have been committed on the 20th day of March, 1941.

When appellant was brought into open court for arraignment, he advised the court that he was without counsel and was too poor to employ an attorney, whereupon the court appointed the Hon. Dan E. Archer and the Hon. J. O. Ward to represent him upon the trial. After the attorneys had conferred with the appellant, he was again brought into open court for the purpose of arraignment, at which time he informed the court that his correct name was Orrin J. Brown. The court then instructed the District Attorney to change the name in the indictment from Robert Lawrence to Orrin J. Brown, which was accordingly done; and the style of the case upon the docket was changed from The State of Texas v. Robert Lawrence, No. 121, to The State of Texas v. Orrin J. Brown, No. 121. The case was then set for trial on June 10, 1941, at 10:00 o'clock A. M.

It appears from the record that early on the morning of the 20th day of March, 1941, the body of a woman was found by a truck driver lying on the side of the highway in Hansford County. Her head had been fractured with some blunt instrument. A hammer was subsequently found by the side of a bridge near where the body was found. The truck driver stopped and viewed the body and noticed that the woman was dead. He then summoned a neighbor who lived a short distance down the highway from the scene of the murder; and soon officers were called, who took charge of the body and turned it over to an undertaker. The body was kept by the undertaker for approximately twenty-five days before it was buried. The officers began a search for the person who committed the homicide by going to the various tourist camps, restaurants and filling stations in Hansford and adjoining counties. They were informed at one tourist camp that a man had registered as Robert E. Lawrence and had given his address as being in Chicago, Illinois; and they also learned that his automobile bore an Illinois license. At other tourist camps it was learned that a man and his wife had registered under another name but had given the same address. The officers took a shoe from the foot of the deceased which revealed the fact that it had been sold by a store in Marion, Indiana. They took this shoe to Marion, Indiana, and to the store which sold this type of shoe and found that the particular shoe had been sold to a woman by the name of Leota Murphy. The officers also took with them a coat from the body of the deceased and found that it had been sold by a store in Marion, Indiana, to a woman by the name of Leota Murphy. The officers then located the relatives of Leota Murphy in Marion, Indiana, and learned that she had left that place about the 10th of March in order to meet a man in Chicago by the name of Robert Lawrence whom she was to marry, she having theretofore become acquainted with him by correspondence through the "Get-Acquainted Correspondence Club" in Denver, Colorado. These relatives delivered to the officers the advertisement which Leota Murphy had received and through which she became acquainted with Robert Lawrence. This advertisement gave his address at a stated place in Chicago. The officers went to this address, and on the door to an office in the McCormick Building in Chicago the name of "Robert Lawrence, Produce," was written. This was at the address which had been found on the tourist camp registers in Texas and on the adver-

tising matter which had been delivered by Mrs. Murphy's relatives to the officers. However, it seems that no one in the building knew Robert Lawrence, but they found the manager of the building who informed them that a man who gave his name as Robert Lawrence had applied for a lease of office space in the building and gave Orrin J. Brown as a reference. In the meantime, the officers had secured the automobile license number at the tourist camp and found that it was issued to one Miss Helen Hess. She was also contacted and stated that on or about the 10th of March, she had loaned her automobile to Orrin J. Brown at a given address and that the car had been returned to her about the 22nd of March. Officers went to the address given by Miss Hess and found Mrs. Orrin J. Brown, wife of the appellant, who was living there with her sister. These women told the officers that Orrin J. Brown lived there but was in New York at that time. The officers made known to them their purpose in coming there. They then waited around the house for aproximately a week before Brown returned from New York. Upon his arrival at his apartment he placed the key in the door thereof, and as he entered the same, he was placed under arrest. At that time he had some baggage inside of which the officers found a necklace, a ring, a money belt, a watch, a pair of spectacles and a case thereto which were subsequently identified as the property of Leota Murphy. The officers also found in the baggage a notebook containing a mixture of jumbled-up words. By taking the first two letters and the fourth letter in the words an officer deciphered the names of three women and their addresses. These women were subsequently contacted and it developed that each of them had received letters from Robert Lawrence of Chicago at various addresses which appeared in the book and at addresses at which he lived. Some of these letters were introduced in evidence after it was shown that they had been written by appellant. They were compared with the genuine handwriting of the appellant and were found to be identical. The articles taken out of the baggage at the time appellant was arrested were identified as having theretofore been sold to Leota Murphy. The President of the National Retail Credit Jewelry Dealers identified the watch by the number thereon which corresponded with his records. The spectacles were identified by an optometrist in Marion, Indiana, as having been fitted by him for Leota Murphy on the 10th day of March, 1941. The other jewelry and clothing taken from the body of the deceased were also identified by relatives as the property of Leota Murphy.

After appellant was returned to Texas, he was identified by numerous persons operating cafes and tourist camps as the man who was in company with the deceased when he stopped at these various places and also at the filling stations where he purchased gasoline and oil. He was likewise identified by the brother and sister-in-law of the deceased, who testified that about the middle of March the appellant and Leota Murphy came through Oklahoma and stopped at their home to see them. Appellant categorically denied all of the State's testimony. He denied that he knew Leota Murphy and denied that officers found articles belonging to her in his baggage. He also denied that he had ever been in Texas.

The hammer with which the homicide was committed had human blood on it which, according to the testimony of the chemist, was shown to be of the same type as that found on the clothing of the deceased. It also had hair on it from a woman's head and this was shown to be of the same kind of hair as that taken from the head of the deceased.

The above is in substance a brief statement of the salient facts proven upon the trial.

Appellant has four bills of exception in the record in each of which he complains of the admission of certain testimony. These bills are all deficient and are not ordinarily considered by this court. However, since appellant was awarded the death penalty, we will discuss them in the order presented.

By Bill of Exception No. 1 appellant complains of the action of the trial court in admitting in evidence the shoes, coat, hat, and jacket taken from the body of the deceased, the identity of which was sufficiently proven as shown by the court's qualification of the bill. Appellant objected to the introduction of this wearing apparel upon the ground that it would inflame the minds of the jury. Just why this wearing apparel should tend to inflame the minds of the jury against appellant is not disclosed by the bill. It appears to us that this evidence was admissible for the purpose of identifying the body as that of the deceased, Leota Murphy. We therefore overrule appellant's contention.

Bill of Exception No. 2 shows that after the Sheriff of Hansford County, Mr. Wilbanks, had testified to the fact that while they were staying in the apartment and talking to Mrs. Brown's sister, they learned from her that Brown was in New York; but they did not learn from her his address in the city of New York; that as many as two officers were constantly in the home of Mrs. Brown awaiting the return of the appellant; that after he was placed under arrest he was informed that he was charged with murder in Texas; the witness then testified that appellant refused to waive extradition and it was necessary to extradite him; that he was brought back to Texas as a result of extradition proceedings. Appellant objected to the testimony of the witness to the effect that he (appellant) refused to waive extradition, the ground of objection being that this testimony was inadmissible for the reason that it was a statement made by the accused after he was placed under arrest and defendant not having been warned and the statement not having been reduced to writing as required by Article 727, C.C.P. The bill is qualified by the trial court, who states in his qualification that the only objection urged against this testimony was that it was inadmissible; that no other reason for the objection was assigned. Appellant accepted the bill as qualified and is bound thereby. The testimony objected to was not a confession. It did not in any sense admit his guilt. However, flight is always a circumstance to be shown. Consequently the State had a right to show appellant's hurried departure from the scene of the crime and then his immediate departure from his home to the city of New York and his refusal to voluntarily return to the State of Texas.

In the case of LaFell v. State, 69 Tex.Cr. R. 307, 153 S.W. 884, this court, speaking through Judge Davidson, said that appellant should have been permitted to prove that he agreed to voluntarily return to Texas. Therefore, if it is permissible for a defendant to prove that he voluntarily returned to Texas, we see no good reason why the State should not be permitted to show the contrary.

In the case of Chase v. State, 97 Tex.Cr. R. 349, 261 S.W. 574, 575, this court held that, "as tending to show flight, the sheriff of Parker County was properly permitted to testify that several years after the commission of this offense, at the expense of the state of Texas, he went to another state and brought appellant back to Texas."

In the present instance, appellant had the legal right to explain his reason for declining to waive extradition proceedings, which might have been consistent with that of an innocent person. Having reached the conclusion that no reversible error is reflected by the bill, the same is overruled.

By Bill of Exception No. 3 appellant complains of the action of the court in permitting the introduction of a notebook found in the defendant's baggage at the time of his arrest in which a number of jumbled-up words appeared and which a policeman deciphered and explained. The objection urged against this testimony is that the witness was not qualified and that it did not appear that he was qualified to decipher the codes. The qualification of an expert witness is primarily for the court to determine; and when the court is satisfied with his qualification by reason of his long experience in that line of work, we would not be authorized to set aside the court's conclusion thereon, unless it is made to appear that he has abused his discretion to the injury of the appellant. It was shown that the witness had had years of experience in that line of work, and that as a result of deciphering the code, he located the three women and obtained from them letters which purported to have been written by the appellant, the handwriting of which was compared with documents shown to have been written by the appellant; and the handwriting of the various addresses and words found in the notebook was shown to have been written by the same person. The fact that these three women were found as a result of the witness having deciphered the code words in the notebook, of itself, demonstrated his qualification as an expert on the subject. The facts disclosed by the witness was a circumstance which showed that appellant went under the assumed name of Robert Lawrence. Hence the same was admissible.

By Bill of Exception No. 4 appellant complains of the action of the trial court in permitting the District Attorney, on cross-examination of the appellant, to ask him if he had served a term in the Joliet Penitentiary, to which appellant objected on the ground that it was too remote. The court sustained the objection and appellant did not answer the question. The court then instructed the jury not to consider the Dis-

trict Attorney's question for any purpose. Thereupon the District Attorney inquired of the appellant if he had served a term in the Leavenworth Penitentiary, to which appellant again objected, which objection the court overruled and appellant answered that he did; that the offense for which he was convicted and sent to the penitentiary was obtaining money through the mail by fraud. The District Attorney then inquired of the appellant if he had served a term in the San Quentin Prison in the State of California, to which appellant again objected, and which objection the court overruled. Appellant answered that he did; that this was in the year 1935, and the offense for which he was convicted and sent to said penitentiary was larceny. We are not in accord with the appellant's contention. It is the well-settled rule in this state that former convictions, if not too remote, may be shown for the purpose of affecting his credibility as a witness, whenever appellant takes the stand and testifies in his own behalf. Moreover, the court qualified this bill with the statement that the defendant did not object to the question on the ground that the same was too remote. But in any and all events, the court sustained appellant's objection to the first question; and the other two questions and answers thereto were admissible. See Branch's Ann.Tex.P.C., p. 101, sec. 167, and cases there cited.

Finding no error in the record, the judgment of the trial court is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.