(117 App. Div. 462)

## PEOPLE v. COLMEY.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. FALSE PRETENSES—EVIDENCE—SUFFICIENCY.

In a prosecution for larceny in having obtained money on a certain bond by false representations that it was a valid and subsisting lien, evidence examined, and *held* to establish the fact that such false representations were made, and that the bond was worthless, so as to sustain a conviction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, § 62.]

2. CRIMINAL LAW—EVIDENCE—RES GESTÆ.

In a prosecution for larceny in having obtained money on a certain bond by false representations that it was a valid and subsisting lien, evidence as to the nonexistence of a certain trust company and the falsity of defendant's representation at the time of obtaining the money that he was the attorney for such company, and that the man who was with him and to whom the money was handed over was a wealthy horseman, he being in fact a notorious criminal, was properly received as part of the res gestæ.

3. SAME—COMPETENCY—EVIDENCE OF FLIGHT.

In prosecution for larceny, evidence as to different names under which defendant traveled and was known in various parts of the world, and the conditions of arrest and extradition under which he was found, was competent for the purpose of showing flight from the scene of his crime.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 776–785.]

4. SAME—APPEAL—HARMLESS ERROR.

In prosecution for larceny in having obtained money by false representations that a certain bond was a valid and subsisting lien, the admission of evidence as to the contents of a check for $25 given to defendant for his services as attorney, in which capacity he made the representations as to the validity of the bond, without producing the check, which was in the hands of the attorney, was harmless, as defendant was not indicted for receiving money on the check.

5. FALSE PRETENSES—FALSE REPRESENTATIONS BY ATTORNEY TO CLIENT.

Where a person falsely represented to another that he had investigated the validity of a certain bond, and knew that it was an outstanding and subsisting obligation, and that interest had only recently been paid on it, the fact that he was acting as attorney for the person to whom he made the representations did not relieve him from criminal responsibility therefor.

6. CRIMINAL LAW—EVIDENCE—COMPETENCY—FLIGHT.

In a prosecution for larceny, evidence as to places where defendant, who was traveling under many aliases, had been, and as to the source from which information was received as to defendant's whereabouts, was admissible upon the question of flight, to show how he escaped apprehension for a long time and the efforts made to locate him, even though the person who gave the information was not produced as a witness.

Appeal from Court of General Sessions, New York County.

Charles Murray Colmey was convicted of grand larceny in the first degree, and appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, IN-GRAHAM, HOUGHTON, and LAMBERT, JJ.

Clark L. Jordan, for appellant.

E. Crosby Kindleburger, Asst. Dist. Atty., for the People.

HOUGHTON, J. The defendant was indicted in January, 1902, charged with the crime of grand larceny in the first degree in having obtained $600 from one James A. Smith by falsely representing that a certain bond of the New York & Hempstead Railroad Company, of the face value of $1,000, was a subsisting and outstanding first mortgage bond against said railroad, not yet due, whereas in fact it was not outstanding and subsisting, but had been foreclosed and was of no value. The trial was not had until January, 1906, and it resulting in a conviction as charged. The defendant appeals, alleging that the people failed to establish that any false representations were made by him, or that the bond was worthless, and that many errors prejudicial to him were committed in the course of his trial.

We think the people fully established that the defendant falsely represented that the bond was a valid and subsisting lien of the New York & Hempstead Railroad Company. The evidence shows that the defendant, calling himself "Charles A. Moore," in company with a man who styled himself "James W. Morgan," represented to the complainant that he was an attorney at law and acting for a corporation known as the "International Trust Company," located on Liberty street, in the city of New York, which held the bond in question as security for a loan which it had made to Morgan of $600, and that Morgan, who was about to depart from the city of New York, was fearful that during his absence the trust company would sell the bond, and therefore desired that complainant loan that amount of money on it and hold it until Morgan could redeem it. The defendant had the bond in his possession, and stated to complainant that he had investigated the subject and knew that the bond was valid, and that the coupon for the last interest had only recently been cut off. To these representations the complainant replied that, if the defendant was attorney for the company, he would take him as his own attorney, and rely upon his advice and pay him for it, and loan the money; and the next morning the defendant delivered the bond to complainant and received from him therefor the sum of $600, and in addition a check for $25 for his services in the matter. The complainant testified that he relied upon these representations, and that he subsequently endeavored to find the International Trust Company, but could discover no such corporation, and that he believed that Morgan was a man of wealth as he was represented to be. He subsequently learned, through defendant's admission, that his name was not Morgan, but "Jim McNally, the green goods man." The proof was ample, too, that the bond was worthless. The record on appeal contains a stipulation summarizing the exhibits introduced by the people, with respect to the foreclosure of the railroad mortgage, which shows that on July 19, 1875, in a foreclosure action brought by the Farmers' Loan & Trust Company against the New York & Hempstead Railroad Company, a decree of foreclosure

and sale was entered, foreclosing the mortgage given to secure the bond in question, with others, and appointing a referee to sell the property covered by the mortgage. The referee reported that on the 23d day of September, 1875, he sold all the lands and premises mentioned in the mortgage and judgment for the sum of $100. No report of deficiency appears, nor does any order of confirmation of the sale appear to have been entered. The particular bond in question was not proven before the referee, but 200 and over of bonds of the same issue were proven on which default had been made in the payment of interest by the company. The defendant insists that the bond in question might be of some value, because the mortgage covered rolling and other stock, as well as real estate and rights of way, and only the mortgaged lands and premises were sold. It must be assumed that the judgment was regularly obtained, and that the sale was properly conducted, and that, a sale having been had, all that the railroad company owned which was covered by the mortgage was included in the judgment and sold. The bond was therefore cut off by the foreclosure, and was worthless, and the falsity of defendant's representations in this respect was clearly established.

It is urged as error that the people were permitted to prove the falsity of various other representations, such as the nonexistence of the International Trust Company, and the attorneyship of defendant for it, and that the man known as Morgan was not a wealthy man, nor a horseman, as the defendant stated, but was a notorious criminal. All these minor false representations were connected with the principal false representation alleged in the indictment, and were made at the same time, and were simply false incidents surrounding the main false representation charged and relied upon. We think they were a part of the res gestæ, and that evidence concerning them was properly received.

It is also insisted that error was committed in allowing proof that the defendant was arrested, or found under arrest, at various times. Some of the occasions under which the witnesses speak of the defendant as under arrest are mentioned manifestly as excuses for not then apprehending defendant and bringing him to trial on the present indictment. In one instance the defendant was under requisition to the state of Illinois under an indictment found in that state against him under another name than the one under which he was known to complainant; and another occasion relates to the time when he was finally apprehended, he then being in the custody of other officials. The evidence respecting the different names under which defendant traveled and was known in various parts of the world, and the conditions of arrest and extradition under which he was found, we think, was competent, not only for the purpose of identification, but for the purpose of showing flight from the scene of his alleged crime in this State. If any errors were committed in the development of these facts, they are not sufficiently grave to require a reversal of the conviction.

It is also claimed that evidence of the contents of the $25 check which complainant gave to defendant for his alleged services as attorney was permitted to be given without producing the check, which was accessible, because it was in the custody of the people. If error was

committed in this respect, it was entirely harmless. The defendant was not indicted for receiving the money on that check, or obtaining the money which he did by it. Even if it might have shown on its face that the defendant was acting as attorney 'for the complainant, and that it was given in payment for his services as such, this fact was not disputed, but was admitted, by the people. The fact that the defendant was acting as attorney for complainant would not relieve him from the consequences of his false representations and pretenses that he had investigated the validity of the bond and knew that it was an outstanding and subsisting obligation against the railroad company, and that interest had only recently been paid on it.

Nor was any reversible error committed with respect to the evidence of the witness Buchanan that he saw the defendant in Paris in the summer of 1902. It is insisted that the evidence of the witness McConville is based upon a portion of this evidence, although it had been stricken out by the court. It was proper for McConville to state from what source he received his information as to the whereabouts of the defendant, even if the person who gave it to him had not been produced as a witness. The defendant was under indictment, and was traveling under many aliases, and his apprehension under the present indictment was being sought. How he happened to escape apprehension for so long a time, and the efforts which were made to locate him, were proper facts to be developed upon the question of defendant's flight, which, if established, was some evidence of his guilt.

The defendant is plainly guilty, and we see no reason for disturbing his conviction; and it must be affirmed. All concur.