(120 App. Div. 42)

## PEOPLE v. SATTLEKAU.

(Supreme Court, Appellate Division, First Department. June 7, 1907.)

1. FALSE PRETENSES—WEIGHT AND SUFFICIENCY OF EVIDENCE.

In a prosecution for grand larceny by false pretenses, evidence *held* to sustain a verdict of guilty.

2. SAME—INDICTMENT—RELIANCE ON PRETENSES.

In a prosecution for grand larceny by false pretenses, the indictment is not defective because it contains no allegation that the complainant relied on the representations alleged in the indictment to have been made by the defendant to her.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, §§ 38–41.]

.3. SAME.

In a prosecution for grand larceny by false pretenses, the indictment, after setting up the false representations, alleged that by color and by aid of these defendant feloniously, etc., obtained from the complainant a certain sum, with the intent to deprive and defraud her of the same and to appropriate it to his own use. *Held*, that this was equivalent to alleging that complainant parted with her property in reliance upon these representations, and was sufficient.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, §§ 38–41.]

**4. SAME.**

    An indictment in a prosecution for grand larceny by false representations is not defective because the representations alleged therein are not all of existing facts, but some are as to his hopes and intentions to do things in the future, since defendant made, not only the representations as to existing facts mentioned, but also other representations, proof of which was clearly competent as part of the res gestæ.

Appeal from Court of General Sessions, New York County.

Ernest Paul Sattlekau, indicted as Ernest Paul, was convicted of grand larceny, and appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and LAMBERT, JJ.

Samuel Loibovits, for appellant.

William Travers Jerome (E. Crosby Kindleberger, of counsel), for respondent.

CLARKE, J. The defendant was indicted and convicted of the crime of grand larceny in the first degree for obtaining by false pretenses the sum of $1,000 from Rosa Kaiser, a lady's maid and seamstress. The defendant first met the complaining witness near the flower stand at the Grand Central Depot on April 20, 1906, through an advertisement inserted by him in the New York Herald, signed "Bachelor," and which, according to his testimony, read:

"Good woman wanted. Practical housekeeper for hotel purposes. Possibility of matrimony.".

The witness answered this advertisement by letter, giving her name and address, and stating: ·

"If gentleman would correspond with reference to the letters, I would like to get particulars."

In reply she received from the defendant a letter, signed "E. Paul," upon paper bearing the heading: "Uncle Sam Hotel. E. Paul, Prop. Rates $2 per day; special by the week, Millville, Pa."—arranging for an interview at the Grand Central Depot. The defendant met her, stated to her that he was Ernest Paul (although his real name was Sattlekau), asked whether she was Miss Kaiser and whether she had received his letter, and upon receiving an affirmative answer asked her to take a walk. They went to the Terrace Garden, heard the music, and had a long talk. Subsequently she had eight or nine interviews with him, during the course of which he made to her the following representations, as set out in the indictment: That he was then and there a single and unmarried man, and then and there in a condition and able to intermarry with her; that he was then the owner and proprietor of a certain hotel, called "Uncle Sam Hotel," situated at the town of Millville, in the state of Pennsylvania, and that a certain man named Morgan, at Millville, Pa., had heretofore offered, and was then and there ready and desirous, to purchase the said hotel from him for the sum of $6,000; that he then and there had an option for the lease for the period of 15 years, for the sum of $20,000, of a certain hotel, called the "Studio," situated on the east side of Sixth avenue, and that he was desirous of procuring from her, the said Rosa Kaiser, the sum of $1,000 for the purpose of enabling

him to lease the said hotel; and that he desired to lease the said hotel for the purpose, among other things, of making of the same a home for her and himself, to be occupied by them upon their marriage. He made other false statements, not set out in the indictment, but proved upon the trial. On the 29th of April, 1906, he wrote to her the following letter:

"My Dear Rosa: I have been hustling things here to-day in great shape. Saw the bank cashier, and as a personal favor he will increase the loan to $3,000, instead of $2,000. I can have the loan for years, as long as I pay the interest. Then I called Morgan, the man who wants the Uncle Sam Hotel, and told him I was ready to do business. He promptly got out a bank deposit certificate for $4,000; but the other $2,000 he cannot pay till the 15th of May. He has the money out on mortgage. From the banker I learned that the party who owes Morgan the money has more than $2,000 in bank, and that the money will be promptly paid on the 15th. Of course, until Morgan pays the $2,000, I do not turn the place over to him, so that I will get another 15 days out of the place here. Business is good, and, as I am not buying any stock now, I can figure on some $300 to go to me in these 15 days. You will see now that I have all the $18,000 I need for the New York business.

My bank balance is some.....................................$ 8,700
Until the 15th I will take in.............................. 300

Total bank balance.........................................$ 9,000
Received from Morgan on account of the sale of the hotel... 4,000

                                                            $13,000
Loan from the bank........................................ 3,000

                                                            $16,000
To be paid by Morgan on the 15th of May.................. 2,000

                                                            $18,000

"If I could wait until the 15th now, to buy the New York place, I would be all right; but the man told me Saturday that he could not hold the place for me after Monday noon, as there are two other parties after it. So I will have to find $2,000 on Monday morning. $1,000 I can get from the whisky firm I told you about, and the other $1,000 I want you to furnish, if you will. I will pay it back on the 15th, when I get Morgan's $2,000, and for the two weeks I will pay you 6 per cent. interest, same as I pay my bank for the $3,-000. I will give you a judgment note for the $1,000, and that is the only judgment note I have to give. All the $18,000 I own will stand as security for your $1,000. You are absolutely safe in the matter, Rosa, as a mere business transaction, even if you do not consider the fact that you are helping the man who is going to be your husband in a month, and that by helping him, of course, you are helping yourself. I expect to reach the Ashland House, Fourth avenue, near Twenty-Third street, on Monday morning about 10 o'clock, and would like you to meet me there and go to the bank with me and get the $1,-000. Tell your lady you must get off for an hour to attend some important business. If she kicks, tell her to take the job, and you take a rest for a month, until we get married. I am giving this letter to a man who is going to New York on the next train, and who will mail it on his arrival there, so it will reach you Monday first mail. With kindest regards.
"Yours sincerely,                                         Ernest."

On the 1st of May, 1906, complainant testified that she met the defendant, at his request, at a hotel in this city, and that he said to her:

"We must hasten. I want to finish this deal about the lease of this hotel on Sixth avenue, and I must have the money. You must go to the bank and get it, and I will go with you."

She testified that she drew $1,000 from the bank, and they went back to the hotel, where the defendant said: " 'I want you to give me the money now.' He said that I was perfectly safe, as he was the owner of the Uncle Sam Hotel, and he said he was a wealthy man, and I was perfectly secure about the money, and I would get it back" —and that, believing his statements to be true and relying upon them, she gave him the $1,000; that he then said, "Now I must go and finish up this deal;" that he said, "I will meet you at 5 o'clock at the hotel again;" that she was there and waited, but instead of seeing the defendant again she received from him a telegram. The telegram was:

"Hoboken Depot, N. J., 1st. To Mrs. E. Paul: Telegram Millville place afire, leaving next train. Will wire tomorrow. Do not worry. Ernest."

Subsequently she received a letter, written on paper with the same heading as that on which his first letter was written—that is, "Uncle Sam Hotel. E. Paul, Proprietor"—reading:

"Millville, Pa., May 1st, 1906.
"My Dear Rosa: Got telegram about fire just after you left. Stopped the deal in New York, because, if damage is heavy, it will cripple me financially, as I will have to pay back the $4,000, and won't have any place to sell. Will write you in a day or so how bad the fire was. Do not worry. You will not lose anything, only you will have to wait for me a little.
"Yours as ever,                                    Ernest."

These were the only communications that she received from the defendant after giving him the $1,000, and she did not see him again until after his arrest. The defendant was arrested on July 13th, near the flower stand at the Grand Central Station, just as he was bowing to and addressing another woman who had some flowers in her hand. In his first letter to the complaining witness, arranging for the interview, he has said: "For recognition, please carry a few violets in your hand." He admitted that he was a married man, and that he had received probably a hundred answers to similar advertisements he had put in the newspapers, and had in his possession a list of the names and addresses of his correspondents.

The defendant was a witness in his own behalf and was examined at great length. He called no other witnesses to substantiate his story, which in essential details corroborated that of the complaining witness, and where it contradicted her was self-contradictory and not credible. The jury properly found a verdict of guilty. The evidence was sufficient to justify the finding that the representation that defendant was the owner of the Uncle Sam Hotel was the representation of an existing fact, that said representation was false, that the complaining witness believed it to be true, and that in reliance upon its truth she gave the $1,000 to the defendant. There was no Uncle Sam Hotel at Millville, Pa., and the defendant was not the proprietor of it. It was not burned on the day he got the $1,000. The deliberate intention to defraud, the falsity of the pretenses made, and the reliance by the complaining witness thereon were fully established. If there be such a crime as obtaining money under false pretenses, this is that case. The defendant was a clever swindler of confiding women.

The appellant urges that the indictment is defective, because it does

not contain an allegation to the effect that the complainant relied upon the representations alleged in the indictment to have been made by the defendant to her, and that such an allegation is absolutely essential to the validity of an indictment for grand larceny by false pretenses, and cites in support thereof People v. Baker, 96 N. Y. 340. That case did not deal with the question of the necessary allegations in an indictment at all. What was considered was the proof necessary to establish the crime. Said Judge Earle:

"In order to constitute the crime of obtaining property by false pretenses, it is not sufficient to prove the false pretenses and that property was obtained thereby; but it must be proved that the false pretenses were made with intent to cheat and defraud another."

Here that intent to cheat and defraud were abundantly proved. Again:

"Another essential element of the crime which the people, in a case of this kind, are bound to establish, is that the money was paid or the property parted with in reliance upon or under the inducement of the false pretenses alleged."

Here the people did establish that the money was paid in reliance upon the false pretenses alleged.

The appellant further urges that the indictment is also defective, in that it does not allege that complainant believed to be true the representations alleged to have been made, or that they were the inducing cause of the complainant's parting with her money, and cites People v. Rothstein, 180 N. Y. 148, 72 N. E. 999. This case, also, deals not with the indictment, but with the proof. It held that the false representation then under consideration was not the assertion of an existing intention, but was a false representation as to an alleged existing fact, and that this false representation was fully within the principle of the cases cited. Here there was a false representation of an alleged existing fact. In the indictment at bar, after setting up the false representations, the allegation proceeds:

"By color and by aid of which said false and fraudulent representations the said Ernest Paul did then and there feloniously and fraudulently obtain from the possession of the said Rosa Kaiser the sum of $1,000, with intent to deprive and defraud the said Rosa Kaiser of the same and of the use and benefit thereof, and to appropriate the same to his own use."

This is equivalent to alleging that Rosa Kaiser, in parting with her property, relied upon that pretense.

In People v. Rice, 13 N. Y. Supp. 161, 59 Hun, 616 (affirmed on opinion below 128 N. Y. 649, 29 N. E. 146), a similar indictment was demurred to on the ground that it was insufficient, because it nowhere contained any allegations that the money was paid in reliance upon the false statements of the defendant, nor any allegation equivalent thereto. Presiding Justice Dwight, writing the opinion of the General Term, referring to the two cases cited in support of the demurrer (People v. Dumar, 106 N. Y. 502, 13 N. E. 325, and Clark v. People, 2 Lans. [N. Y.] 329), said:

"Neither of the cases is authority for the proposition that the allegation of this indictment, namely, that the money was obtained by 'color or aid of· or by false and fraudulent representations, following, as it does, the language of

the statute, is not equivalent to the allegation in that respect usually employed, namely, that the end was accomplished by means of the fraudulent representations. In the Case of Dumar, the question was not as to the sufficiency of the indictment, but a question of variance between pleadings and proof. * * * In the case of Clark v. People, supra, the language was, 'By which said false pretenses he then did unlawfully obtain, etc.,' and that was held to be a substantial averment that the prisoner had obtained the property from the prosecutory by means of false pretenses made, and of the latter's belief therein, and that the indictment was not defective in that particular. * * * Certainly to allege that the property was obtained by false pretenses, etc., is not stronger than to allege that it was obtained by color and aid of false pretenses, etc. The opinion in that case repeats and enforces in various forms the proposition that the property was obtained by false pretenses necessarily implies that the owner of the property relied upon that pretense. * * * All the authorities and precedents are substantially to the same effect on this question. * * * The indictment in this case charges the crime in the language of the statute, and fully and plainly recounts the acts alleged to constitute a crime."

The appellant further urges that the indictment is also defective because the representations alleged therein are not all of existing facts; that some representations express the defendant's desires, wishes, or hopes, others refer to his means or ability to pay debts, others as to promises or intentions to do things in the future; and cites People v. Blanchard, 90 N. Y. 319. But in that case the court said:

"While the indictment must show what the false pretenses were, and state them with reasonable certainty and precision, it is not necessary that the prosecution should prove them all. A conviction was had in the present case, founded upon a part only of the representations stated in the indictment, which was permissible."

See, also, Webster v. People, 92 N. Y. 422.

In the case at bar, the people proved that between April 20th and May 1st, the date when the defendant obtained the money from Rosa Kaiser, defendant made, not only the representations as to existing facts mentioned in the indictment, but also other representations. Proof of these other representations was clearly competent as part of the res gestæ. People v. Colmey (Sup.) 102 N. Y. Supp. 714, affirmed 188 N. Y. ——, 80 N. E. 1115; People v. Rothstein, 180 N. Y. 148, 72 N. E. 999. "It is not necessary, to sustain a conviction, that such pretense should be the sole inducement to the act of the party defrauded." People ex rel. Phelps v. Court of Oyer and Terminer, 83 N. Y. 436.

We have carefully examined the record in this case, and have reached the conclusion that the defendant was properly convicted upon the evidence of the crime whereof he stood charged, and that no errors were committed to his prejudice.

The judgment, therefore, should be affirmed. All concur.