THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LEON L. COHEN, Appellant.

Fourth Department, October 30, 1957.

*John Hollis* and *Albert Hollis* for appellant.

*Harry L. Rosenthal, District Attorney (John C. Little, Jr.,* of counsel), for respondent.

KIMBALL, J. The appeal is from the judgment of conviction rendered against the defendant on September 15, 1955 in the County Court of Monroe County, and from certain intermediate orders. The indictment upon which the defendant went to trial contained 9 counts. The first 3 counts related to a fire insurance loss near Harrisburg, Pennsylvania, on August 24, 1954. The last 6 counts related to a fire loss in a manufacturing plant in the city of Rochester on the 4th day of September, 1954. Counts 1, 4 and 7 charged violation of subdivision 1 of section 1202 of the Penal Law. Counts 2, 5 and 8 charged violation of subdivision 2 of section 1202 of the Penal Law and counts 3, 6 and 9 charged the crime of grand larceny in the first degree by false and fraudulent representations and pretenses under sections 1290 and 1294 of the Penal Law. The defendant was found guilty on all nine counts.

A demurrer was interposed to the original indictment. The court eliminated 2 of the original 11 counts. There was a motion by the defendant to separately try the counts relating to the Harrisburg fire and the counts relating to the loss in the manufacturing plant. The motion was denied. We think there was no abuse of discretion in that regard. The motion for separate trials necessarily had to be decided upon the situation as it was at the time the motion was made. The court could not anticipate that, upon the trial, there would be evidence offered which was prejudicial and a position taken by the prosecution contrary to that stated to the court upon the motion

for separate trials. We find no error in the disposition of the demurrer and the motion for separate trials.

A most careful examination and study has been made of the record in this case and a full consideration of the points of the respective parties. The testimony of over 90 witnesses was voluminous. The exhibits were very numerous. The trial consumed about 6 weeks.

There were errors of various degrees of importance during the course of the trial of which some might be said not to have prejudiced substantial rights of the appellant. There was testimony which does not impress us either as to its quality, relevancy or probative value in relation to the crimes for which the defendant was indicted and tried. As to some of the counts, although there was sufficient evidence to send the questions to the jury, we think the proof was far from compelling. There were some very close questions of fact. In reviewing this whole case, therefore, it is necessary to determine whether there were such serious errors that, in their absence, the jury might have reached a different verdict. A defendant is entitled to be tried for those crimes with which he was charged by the Grand Jury and none others. He is entitled to concise and precise instructions by the court to the jury so that the jury may not be left in doubt or be confused as to what issues they must pass upon. (*People* v. *Ochs*, 3 N Y 2d 54.) He is entitled, at all times, from his arraignment to the coming in of the verdict, to complete frankness on the part of the prosecution. Whether a defendant is convicted or acquitted is a consideration secondary to a scrupulous regard for all the rights afforded to one accused of crime. We have come to the conclusion that there were errors affecting the substantial rights of the defendant; that the presentation of the case was such that the jury could well have thought that they were passing upon the guilt or innocence of the defendant as to some crime not charged in the indictment; that upon the whole record, in all fairness and in the interests of justice, the appellant is entitled to a new trial. (Code Crim. Pro., § 527.)

The appellant is a Rochester man who was engaged in manufacturing under the name of Leco Manufacturing Co., Inc. He and one DeLorenzo had organized a corporation called Code Industries, Inc., to market an automobile accessory known as an audio speed informer. This appliance was made by Leco and sold by Code. There is considerable diversity in the proof as to how many of these units were manufactured from the fall of 1953 to July or August, 1954. The first three counts of the indictment relate solely to the loss or destruction of a

quantity of these units which were being transported in a truck through Pennsylvania. Somewhere near Harrisburg there was a fire in the truck. Later the fire loss was adjusted by representatives of the insurance company and the defendant. The loss was paid. So far as the record shows, no complaint was ever made by the insurance company that the loss was not legitimate and the claim an invalid one. We, therefore, examine the first three counts of the indictment to ascertain what were the specific crimes charged by the Grand Jury.

The first count charges the presentation of a false and fraudulent claim in writing for the truck fire loss of August 24, 1954 by means of a false, fraudulent and fictitious invoice (1) as to the number of units purportedly lost and (2) false proof as to the cost and value per unit of the property purportedly lost. The second count charged subscription by the defendant of a false and fraudulent proof of loss in writing, again specifying the falsity as being in relation to (1) the number of units and (2) the cost and value per unit. The first two counts were pursuant to subdivisions 1 and 2 of section 1202 of the Penal Law. The third count charged grand larceny in the first degree by false representations and pretenses. Again the false representations were alleged to be in relation to the number of units and the cost or value per unit. Specifically, the third count charges that the defendant exaggerated his loss (1) by falsely claiming there were 4,012 units in the truck whereas (as the indictment alleges) there were not to exceed 2,094 such units; (2) by exaggerating the cost or value per unit by representing such cost or value to be $6.75 whereas, in fact, such cost or value per unit was $2. The amount of the larceny as alleged in the indictment was $18,112. The amount paid by the insurance company for the loss was $22,230. So that, the third count of the indictment, by its very wording and content, conceded that defendant had a legitimate loss and claim for $4,118.

Until the opening of the case by the prosecution, there was no intimation that there was in the case any question of incendiarism on defendant's part or conspiracy to burn the contents of the truck. Upon the argument of the demurrer, the assistant district attorney stated to the court: " Now, we make no claim in this indictment of any question of arson here." However, upon the opening, the prosecution informed the jury that the proof would show that the defendant entered into a deal with one Chartoff, an employee of defendant and the driver of the truck, to burn the cargo of units. Motions for a mistrial were denied. Thereafter, over the strenuous objections of the defendant, a great deal of testimony was taken from various

witnesses for the People for the purpose of establishing the fact that the defendant entered into a conspiracy with Chartoff to burn the truck and that defendant was guilty of incendiarism in relation to the truck fire in Pennsylvania. It is familiar and ancient law that, ordinarily, upon the trial for one crime, proof of some other crime is not permissible. There are some exceptions (*People* v. *Molineux,* 168 N. Y. 264). Under the theory of the crimes charged in the first three counts of the indictment, we are not satisfied that such proof of conspiracy and incendiarism was admissible for any purpose.

It is conceded that nothing in regard to conspiracy or incendiarism in connection with the truck fire was ever brought to the attention of the Grand Jury which found the indictment. That Grand Jury could not have found the indictment upon any theory that the defendant was, himself, responsible for the loss. In each of the three counts the indictment particularizes the alleged false representations. Willful destruction is not alleged. It may be argued that under the first and second counts, particulars of the falsity need not be alleged. However, such particulars were alleged and we think the defendant was required to defend only as to those. As to the third or larceny count, no conviction may be had for the larceny by false pretenses unless the false pretenses proved have been alleged in the indictment. (Penal Law, § 1290-a; *People* v. *Lobel,* 298 N. Y. 243; *People* v. *Karp,* 298 N. Y. 213.) In order to convict under the third count, the jury had to find beyond a reasonable doubt, either that defendant falsely represented the number of units on the truck or falsely represented the cost or value per unit. In addition, it had to be found that the insurance company relied upon such false representations when it paid the money. It appears that one Chappel was engaged by the representatives of the insurance company to count and determine the number of units destroyed or damaged and that the appellant had no part therein; that after the count, the adjusters for the parties agreed upon the number. Little or no reliance was placed upon the invoice for the cargo. As to the unit value or cost, the insurance company made a cost analysis from defendant's books and records. The People's witnesses fixed the value or cost per unit in excess of the figure finally agreed upon by the adjusters. The People claimed misrepresentation by reason of a book valuation of $2 for tax purposes. A finding of misrepresentation as to the value or cost per unit was against the weight of evidence. As to the second count, it is undisputed that the defendant signed the proof of loss only after the adjusters had agreed upon the loss and the amount to be paid. The statement of loss attached to

the proof of loss was prepared by the insurance company's adjuster who also prepared the proof of loss. It is difficult to see how the defendant could be said to have subscribed a knowingly false proof of loss with intent that it be presented to the insurance company and used in support of his claim. After the adjusters had exhaustively investigated all phases of the loss and had discussed the figures and had compromised the loss, the signing of the formal proof of loss by the defendant was a mere formality and so considered by the insurance company's adjuster.

The last six counts of the indictment had to do with a loss caused by water, under fire policies carried by the defendant's companies as a result of a fire on September 4, 1954 in the premises used by defendant's landlord on the floor above that occupied by the defendant. There were two insurance companies so that there are two counts charging the presentation of a false claim (Penal Law, § 1202, subd. 1); two charging subscription of a false and fraudulent proof of loss (Penal Law, § 1202, subd. 2) and two counts of grand larceny by false pretenses (Penal Law, §§ 1290, 1294). In these counts the defendant was not charged with the crimes of feloniously destroying insured property but the specification of false pretense in counts 6 and 9 was that the defendant falsely represented that the water damage was caused by the fire on the floor above whereas, subsequent to the fire, the defendant himself damaged the insured property.

It is not necessary here to discuss the evidence as to the last six counts. If it was established that the defendant himself caused the damage, then the question of amounts and values of the property was unimportant. There was much testimony on that point. If the defendant feloniously damaged or destroyed the property and, as it alleged in the indictment, there was no damage caused by the fire, the defendant was entitled to recover nothing. The only proof necessary by the People as to value would be that required to prove grand larceny.

Whether the evidence was sufficient to convict under the last six counts need not be considered. The warehouse fire in September had no relation to nor connection with the truck fire in August. No claim was made that the defendant was in any way involved in the fire which originated in the premises of the defendant's landlord. Over the objections of the defendant, the People were allowed to introduce the evidence which they claimed showed the defendant to be the instigator of the truck fire. As to the last six counts, this was making proof

of the defendant's guilt of an independent crime. Such proof comes within no exception stated in *People* v. *Molineux* (*supra*) and we know of no rule nor have we been cited to any authority which permits such proof. Had the last six counts been tried separately, the reception of such evidence would have required a reversal, out of hand. We think a reversal of conviction under the last six counts is required in this case. If the People insisted upon trying the warehouse counts with the truck counts, then they should have known that the evidence relating to the alleged conspiracy and burning of the truck would certainly be inadmissible on the trial of the last six counts. The court's charge is searched in vain to find any instruction to the jury as to the arson testimony as it related to or did not relate to the warehouse counts. If there was any doubt in the minds of the jurors as to the defendant's guilt under the last six counts, such doubt would easily be removed from the minds of laymen if they were satisfied that the defendant and Chartoff were guilty of engineering the truck fire. The respondent takes the position that there being some similarity between intentional destruction by fire and intentional destruction by water, the evidence of arson or conspiracy was competent on intent or motive under the last six counts. *People* v. *Dales* (309 N. Y. 97) is cited. That case is not authority for the respondent's position. The defendant was not charged with nor was being tried for either intentional destruction of property by fire or for intentional destruction of property by water. The crimes charged in the indictment are false claims and larceny by false pretenses. As Judge FULD said in the *Dales* case (*supra*, p. 101): " When evidence of other crimes has no bearing other than to show that defendant is of a criminal bent or character and thus likely to have committed the crime charged, it is excluded." The error in receiving the arson or conspiracy evidence was most prejudicial and requires reversal.

The charge to the jury failed to clearly define the issues to be determined by the jury. Some portions were inconsistent with others and certain instructions were contrary to law. In charging as to the first count, the jury was instructed that there were three fraudulent acts, one of which was a set fire. This was not before the Grand Jury nor set out in the indictment. However, the jury was told that: " Should you reach the conclusion that the defendant participated in the arrangement of the fire, then, of course, your problem would not be too difficult with regard to the others." Was the jury being told that if they found the defendant guilty of participation in the truck fire, they should have little difficulty in finding him guilty of

claiming false numbers of units and false value or cost per unit? If so, it was error. Still referring to the first count, the court said that there was no arson charge in the indictment; that the testimony in relation thereto could be considered upon the issues but that the jury were " by no means to reach a conclusion principally or find any small part of guilt upon that count or the next two following counts, merely because you feel that the defendant may have been involved in the arson ". However, the charge continued as to the third or larceny count and the jury was told that " the pleaded allegations with regard to the claimed false pretenses are substantially those to which I have referred in connection with the first count, (one) that the statement that the goods were destroyed by fire, a fire covered by the policy on August 24th, the People's contention in that connection being that the fire was by the active connivance or participation of the defendant ". The court thus added to the false pretenses alleged in the third or larceny count, a third one not pleaded, viz., that the truck fire was one participated in by the defendant. This was error in law. This court said in *People* v. *Cooper* (224 App. Div. 145, 146): " In an indictment for grand larceny by false pretenses it is necessary to allege the false pretense, to negate it and then to prove it as alleged." Under the charge, even though the jury found no false representation as to number of units or value or cost per unit, it could have convicted of grand larceny by finding that the defendant was responsible for the truck fire.

Further emphasis was given to the testimony relating to the alleged conspiracy and truck fire when the court, at considerable length, charged the jury under section 399 of the Code of Criminal Procedure. The corroboration of an accomplice in order to convict a defendant of the crime for which he was charged was not in the case at all. There was no claim or intimation that the defendant had an accomplice in any of the crimes charged in the nine counts in the indictment. The court must have been under the impression that the defendant was being tried for participation in the burning of the truck. Since the only crime which had been called to the jury's attention involving an accomplice, was that of conspiracy or arson, the instruction was tantamount to telling the jury they could not find defendant guilty of conspiracy or incendiarism on the testimony of his alleged accomplice Chartoff, unless it was corroborated. The instruction was general. The jury was not told that there were no accomplices as to any crime charged in the indictment. The jury could have inferred that the law

on the corroboration of an accomplice was to be applied in respect to the crimes charged. The instructions in relation to section 399 of the Code of Criminal Procedure were prejudicial.

The judgment of conviction should be reversed and a new trial had.

BASTOW, J. (dissenting). I am unable to agree with the decision about to be made. It is being held therein that when a person is indicted for larceny by false pretenses " no conviction may be had for the larceny by false pretenses unless the false pretenses proved have been alleged in the indictment." There is cited in support of this statement section 1290-a of the Penal Law; *People* v. *Lobel* (298 N. Y. 243) and *People* v. *Karp* (298 N. Y. 213). Section 1290-a provides in part that if " the defendant made use of any false or fraudulent representations or pretense in the course of accomplishing, or in aid of, or in facilitating the theft, evidence thereof may not be received at the trial unless the indictment * * * alleges such representation or pretense * * *. *As long as one of the false or fraudulent representations or pretenses alleged be proven, any other related representation or pretense, though not alleged, may be given in evidence.*" (Emphasis supplied.)

As I read this statutory provision it does not state that no conviction may be had unless the false pretenses proved have been alleged in the indictment. It provides that (1) false or fraudulent representations must be alleged in the indictment and (2) if any one of such representations or pretenses is proven any other related representation or pretense though not alleged, may be given in evidence.

The provisions of the Penal Law relating to larceny were revised by chapter 732 of the Laws of 1942. Section 1290 redefined larceny. The former section defined not a single crime of larceny but three separate and distinct offenses, known as larceny, embezzlement and obtaining property by false pretenses. Judge FULD — then an assistant district attorney of New York County — in writing about the re-enactment stated that the new law " does not broaden the scope of the crime of larceny nor designate as criminal what heretofore has been innocent and not criminal " (The New Larceny Law, N. Y. L. J., May 19, 1942, p. 2124, cols. 1, 2).

At the same time the Legislature enacted section 1290-a. The provisions thereof were not new as Judge FULD pointed out in the same article. After reviewing the contents of the section it was written (col. 3) : " Under the old law, the People were privileged to show false representations other than those

alleged in the indictment, as long as they were related to the transaction charged (see People v. Rothstein, 1904, 180 N. Y., 148, 154–155; People v. Sattlekau, 1st Dept., 1907, 120 App. Div., 42; People v. Colmey, 1st Dept., 1907, 117 App. Div. 462, aff'd 188 N. Y., 573; People v. Donaldson, 1918, 36 Cal. App., 63, 171 Pac., 442; State v. Elliot, 1912, 68 Wash., 603, 123 Pac., 1089). The new statute expressly perpetuates that rule by providing that as long as one of the false or fraudulent representations or pretenses alleged be proven, any other *related* representation or pretense, though not alleged, may be given in evidence.'' (Emphasis supplied by the author.)

*People* v. *Lobel* (298 N. Y. 243) has no relevancy to the problem before us and in any event the holding therein has been overruled by the 1950 amendment (L. 1950, ch. 149) of section 1290-a. When that case was decided the last sentence of the section provided that if the theft '' was effected '' by means of any false or fraudulent representation or pretense, evidence thereof could not be received at the trial unless '' such means '' were alleged in the indictment. The court held that if a thief gains possession of or title to the property without the owner's consent it could not be said within the language of section 1290-a that the theft was '' effected '' by false pretense, despite the fact that prior to the actual theft false representations were made which produced the property stolen. Three members of the court dissented and Judge Fuld writing for two of the dissenters expressed the view (pp. 261–262) that '' if the People elect to prove that the thieves made use of false representations to induce certain conduct on the part of their victim, and those representations constituted an integral part of the scheme devised to steal the property — as in the case here — the theft is one ' effected ' by those misrepresentations, and the indictment must set them forth.''

Thereafter, the Legislature amended the section (L. 1950, ch. 149) by deleting the terminology of a theft being '' effected '' by means of a false representation or pretense and substituted the present language that if a '' defendant made use '' of false representations '' in the course of accomplishing, or in the aid of, or in facilitating the theft '' they must be alleged in the indictment or evidence thereof may not be received.

Thus, to summarize, *People* v. *Karp* (*supra*) and *People* v. *Lobel* (*supra*) are authority for the proposition that if the indictment contains no allegation of false representations or pretenses proof thereof may not be received. But once such an allegation is found in the indictment then the last sentence of section 1290-a comes into play and if any one of the alleged

false representations or pretenses is proved " any other related representation or pretense, though not alleged, may be given in evidence."

The third count (as renumbered) of the indictment accuses the defendant of the crime of grand larceny and alleges four false representations. They are (1) that the cargo of speed informers was destroyed by fire on August 24, 1954; (2) that said loss was total; (3) that there were 4,012 informer units in said cargo and (4) that the unit value of each was $6.75. The amount of the charged larceny was $18,112. The amount of the paid loss was $22,230. Thus, the defendant was apprised before the trial that he was accused of larceny in that he had falsely represented that there was a total fire loss of 4,012 units at $6.75 per unit. In my opinion there was overwhelming proof that no more than 3,000 units had even been manufactured and that prior to the fire the unsold units were not salable, the retail price had been repeatedly reduced and finally the book value of the unit price had been reduced to $2 per unit.

It was proved beyond a reasonable doubt that the defendant knowingly subscribed and presented to the insurer a false proof both as to the number of units and the amount of the loss. While it is true that the statement was prepared by a representative of the general adjustment bureau, there was clear proof that the defendant and his employee, Chartoff, represented to both Beglin and Olson, representatives of that bureau, that there were 4,000 units on the truck. The defendant further falsely represented that 3,000 of these units were being shipped to defendant's brother-in-law in Florida, who was to pay for 1,000 units within 30 days and the remaining 2,000 were on consignment. This obviously presented a picture to the adjusters of a routine bona fide fire loss and it is apparent from all the testimony that the loss was settled upon these and other representations. The jury could have found that the defendant had no purchase order for any portion of the units from his brother-in-law. The latter testified that " strictly as an accommodation I told him (the defendant) it was all right to send the units down to put in my garage * * * and when he came down, hire a truck go up and down the east coast disposing of the units in that manner." The jury could further have determined from other testimony that it was the intention of defendant that the units should be burned in the truck fire, as they were, before they reached Florida. The triers of the fact could further have found that all of this Florida activity was window dressing to convince the insurer that the loss was a routine one. No useful purpose would be served in further

detailing the evidence. There was a wealth of proof that defendant was guilty of the crimes of presenting a false claim in writing, subscribing a false proof of loss and larceny by false pretenses by his statements in the proofs of loss that there were more than 4,000 units on the truck when in fact there were less than 3,000 thereon.

Furthermore, I am unable to agree with the determination that the proof of incendiarism was inadmissible. As I understand the prevailing opinion it is held in substance that such proof does not fall within any of the exceptions enunciated in *People* v. *Molineux* (168 N. Y. 264). Next, it is held that if it be considered a representation proof thereof was inadmissible because only false pretenses alleged in the indictment may be proved upon the trial. In the proof of loss the defendant stated that the cause of the fire was unknown. The evidence now being ruled out showed that Cohen knew the cause of the fire; that he telephoned his insurance agent and requested the issuance of a binder insuring 4,000 units at $6.74 per unit while in transit on the truck. Thereafter, he told Chartoff, one of his employees that he would " arrange an order " with his brother-in-law in Florida and after some conversation it was agreed between Cohen and Chartoff that the latter should start for Florida and while en route throw gasoline on the cargo and then start a fire. All of this was accomplished.

Looking for the moment at the last sentence of the first subdivision of section 1290-a of the Penal Law it would seem that the statement that the cause of the fire was unknown was a related representation properly received in evidence though not alleged in the indictment. But if it could be said as a matter of law that this was not a related representation the evidence was properly received. The rule that a person cannot be convicted of one crime by proof that he was guilty of another and the various exceptions to the rule are well known. Perhaps no clearer statement of the exception with which we are here concerned can be found than the following from *People* v. *Katz* (209 N. Y. 311, 328): " The general rule is rooted in the principle that a man may not be convicted of one crime simply because he may be shown guilty of another when there is no connection between the two. * * * Quite another principle is to be invoked, however, when guilt cannot be predicated upon the mere commission of the act charged as a crime. In such a case the general rule gives way to the exception under which guilty knowledge of a defendant may be proved by evidence of his complicity in similar offenses under such circumstances as to support the inference that the act charged was not

innocently or inadvertently committed. Familiar illustrations of this exception to the general rule are to be found in cases of uttering counterfeit money, in forgery, in obtaining money under false pretenses, and in receiving stolen property.''

'' In order to constitute the crime of obtaining property by false pretenses, it is not sufficient to prove the false pretenses, and that property was obtained thereby; but it must be proved that the false pretenses were made with intent to cheat and defraud another.'' (*People* v. *Baker*, 96 N. Y. 340, 348.) In the case at bar it could be contended by the defendant that the representation as to the number of units destroyed and the value thereof was not false and if incorrect was innocently and inadvertently committed with the representatives of the adjustment bureau having full opportunity to investigate the loss. Admittedly, proof tending to show a defendant guilty of another crime is always damaging to him. But here, where the prosecution was compelled to prove intent to defraud, the evidence that he voluntarily participated in having the contents of the truck burned in Pennsylvania was admissible under the stated exception.

The trial court in its charge expressly told the jury that '' there is no charge here before you of arson in connection with the fire in the truck near Harrisburg.'' In lay language the reasons were correctly stated for receiving the proof and lastly the jurors were cautioned that a finding of guilt on the first three counts of the indictment should not be made '' merely because you feel that the defendant may have been involved in the arson or the proof (that) has been offered tending to indicate his involvement in the firing of the truck or the arson of the truck in the state of Pennsylvania.''

The remaining six counts of the indictment charge the defendant with subscribing and presenting false proofs of loss and the larcenies of moneys from named insurance companies in connection with a separate loss some 11 days after the truck fire in Pennsylvania. It was conceded by all parties that this fire originated on an upper floor occupied by another tenant, in a building wherein defendant's plant was located on the fourth floor. There was no proof or claim that the fire was incendiary in origin and it was these counts the District Attorney was discussing when he stated that there was no claim in the indictment of arson. One searches the evidence in vain for even a hint that there was any connection between the truck fire loss of August 24 and the water damage of September 4. The gravamen of the charge against defendant upon which the last six counts are based is that the day following the fire on the

upper floor, when there had been no fire in defendant's premises and little or no water damage, he removed insured personal property to another room and with the assistance of an employee, who so testified, threw buckets of water over the speed informer parts causing severe water and rust damage. Thereafter he filed proofs of loss and collected substantial amounts from the insurers.

The prevailing opinion states that the evidence relating to the truck fire was received to prove the guilt of the defendant of the counts relating to the later and independent water damage loss. While it is true that the court in its charge did not expressly caution the jury that the evidence relating to incendiarism admitted as to the first three counts should not be considered in passing upon the last six counts no claim is made by the defendant that the jury was misled thereby. No request was made that the trial court clarify the matter and no question is raised in regard thereto by the defendant on this appeal. The court throughout its charge used precise language in referring to the first three counts as a fire loss and the last six counts as a water damage loss. A careful and repeated reading of the entire charge discloses that the jury could not have possibly been misled into believing or inferring that the proof of incendiarism as to the truck fire was to be cast into the scales to convict the defendant of the counts relating to the water damage loss.

But most disturbing is the finding by this court of numerous errors in the charge. It is unnecessary to review them in detail. One example will suffice. The trial court charged the jury pursuant to section 399 of the Code of Criminal Procedure that a conviction could not be had upon the uncorroborated testimony of an accomplice. The prevailing opinion states that this was not in the case and that there was no claim that the defendant had an accomplice in any of the crimes charged in the indictment. It is concluded by the majority that this instruction was tantamount to telling the jury that it could find the defendant guilty of conspiracy or incendiarism on the testimony of Chartoff, who fired the truck. I do not so understand the evidence. Chartoff was an accomplice to the defendant in connection with some of the very counts of this indictment. The first three counts thereof are based upon the activities of Cohen in subscribing and presenting to the insurer a false proof of loss and obtaining money thereby in that he represented there were 4,012 informers on the truck when there were not to exceed 2,094 thereon. The witness, Zitrin, who was Cohen's bookkeeper, testified that after the truck was loaded Cohen told the

witness there was 4,000 units on the truck. Zitrin told defendant there couldn't be that number because the inventory record showed there weren't that many in stock. Zitrin made out an invoice to Chartoff for 2,640 units. Cohen then told him Chartoff was verifying the count. Shortly thereafter, Chartoff came to Zitrin and verified Cohen's statement that there were 3,972 units on the truck. Thereupon Zitrin voided the first invoice and made out another for the figure of 3,972. Turning to the testimony of Chartoff he stated that '' twenty-six hundred and something '' units were loaded on the truck by him and Cohen. An invoice was made out by Zitrin for 2,640 units but Cohen had it changed and the one given to Chartoff was for 3,972 units. Chartoff testified that the defendant '' was going to make it as high as he could make it, which he told me so.''

Thus, the jury could have found that Chartoff not only knew there were 2,640 units on the truck and not 3,972 but actively participated in getting the bookkeeper to make out a false invoice to him for the latter figure. Subsequently, this invoice was used to mislead the insurer but Chartoff's activities as an accomplice did not stop there. When Beglin, the adjuster for the insurer, first discussed the truck contents loss with the defendant, the latter told him there were 3,972 units on the truck and in addition some 28 units that Chartoff had taken out of his personal automobile and placed on the truck. Cohen then called in Chartoff to verify this statement. Chartoff not only did so but made a statement in writing to Beglin, which was received in evidence upon the offer of the defendant. Therein it is stated that '' on Aug. 23-54 I received by memo 3972 SF 100 Audio Speed Informers that I was taking to Miami, Florida.''

Then to cap all this we find in appellant's brief the contention that Chartoff was an accomplice, not only to the firing of the truck, but to the crimes charged in the indictment and '' under the facts in this case it (Chartoff's testimony) is entirely insufficient to convict him (defendant) of the crime charged.'' In the light of all this, however, it is being held reversible error because the court charged that the testimony of an accomplice must be corroborated on the ground that there is no claim or intimation that the defendant had an accomplice in any of the crimes charged in the nine counts of the indictment.

To keep this opinion within any reasonable length it is impossible to discuss in detail the other portions of the charge that have been singled out as constituting reversible error. Suffice it to say that no exceptions were taken by the defendant to any

of these portions of the charge. There were no requests to charge upon these subject matters although the defendant was represented by three experienced trial counsel all of whom actively participated in the trial and this appeal. The general rule is that points raised by briefs, not properly presented by the record, are ordinarily not considered by an appellate court (*People* v. *Hicks,* 287 N. Y. 165, 174). It is recognized that alleged errors will be reviewed and relief granted if they affect the substantial rights of a defendant. In this case, however, the same experienced counsel have presented a voluminous brief and neither therein nor upon oral argument was error assigned to the court's charge in any of the respects now found by this court to be reversible error. In other words, up to the present time none of these matters has been assigned by counsel as a ground for reversal. At was written in *People* v. *Mardavich* (287 N. Y. 344, 346): '' So little importance was ascribed to the refusal [to charge] by the trial counsel that error there has not been asserted by counsel as a ground of reversal. Under these circumstances we conclude that it could not have affected the determination of the jury and should be disregarded under section 542 of the Code of Criminal Procedure.'' It seems to me that we are adding a new dimension to appeals in criminal cases if numerous findings of reversible errors are to be made upon subject matters about which the defendant and his counsel have not complained and from all that appears in record and brief and from oral argument they were and are in full agreement.

I would affirm the judgment of conviction.

All concur, except BASTOW, J., who dissents and votes for affirmance in a separate opinion. Present — McCURN, P. J., KIMBALL, WILLIAMS, BASTOW and GOLDMAN, JJ.

Judgment of conviction reversed on the law and facts and a new trial granted.