STATE of Missouri, Respondent,

v.

Louis CHARLES, Appellant.

No. KCD 28147.

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Richard G. Poland, Cameron, for appellant.

John C. Danforth, Atty. Gen., Charles L. Howard, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

PRITCHARD, Chief Judge.

In a trial to the court, a jury being specifically waived, appellant was convicted of the commission of the crime under § 544.665 RSMo (Laws 1972, p. 1027, § 1), of willful failure to appear for trial of a felony charge for operating a confidence game. The court imposed punishment at four years imprisonment in the Department of Corrections.

The facts are these: Appellant was originally charged with operating the confidence game (a shell game) by which he realized $4,500. The events charged were said to have occurred on July 31, 1973. After preliminary hearing appellant was bound over to circuit court for trial which was first set

for February 19, 1974. On that day the parties, by counsel, mutually applied for a continuance upon a statement of appellant's illness, which continuance was granted to March 12, 1974. On that day counsel appeared without appellant and the case was set for trial for May 13, 1974, and notice of the trial setting was mailed to counsel and to appellant, 3530 East Texas Freeway, Apartment 7, Houston, Texas, by the clerk of the court.

In magistrate court, appellant's bail bond was first set at $25,000, then reduced to $15,000, and ultimately to $10,000. Forfeiture proceedings for appellant's failure to appear were had, and final judgment of forfeiture was entered against the surety, Resolute Insurance Company, for $10,000. That company by its attorney, Jerry Donnelly, appeared in court June 6, 1974, and at his request a continuance was granted to the day of the judgment of forfeiture.

There is no question but that appellant had actual knowledge of the trial setting. On Monday, May 13, 1974, Mr. Donnelly appeared as appellant's counsel, but appellant did not appear. Mr. Donnelly informed the court that appellant had called him "personally late Friday evening and indicated to me that he was in poor health and had an ulcer condition. He stated he had no money with which to buy a plane ticket and also needed a plane ticket for his girl friend who was supposed to be a witness for the defense. I told him that the matter had been continued previously and I did not believe that Mr. Paden or the Court would go along with further continuances, and that he should be here regardless of what it took to get here." Mr. Donnelly then called the bondsman, Mr. Gene Doane, who told him he would pay for the plane ticket to get appellant and his girl friend there for trial. Doane called, but did not reach appellant personally, but did leave word with the girl friend that the plane tickets would be available at the Houston airport. Mr. Donnelly was never again contacted by appellant, but Doane called him the night before May 13, 1974, and told him he had conferred numerous times with appellant's girl friend, Janie May Adams, and Doane felt reasonably sure that appellant knew the plane tickets were available.

Mr. Paden, the prosecuting attorney, told the court that on the morning of May 13, 1974, while Mr. Donnelly was in his office, a person representing himself to be an attorney in Houston, Texas, called him stating that appellant was then in his office and requested a continuance. Mr. Paden advised the lawyer that the state would not agree to any continuances, and bond forfeiture would be initiated, and warrants for appellant would issue. The court did that day issue a warrant for appellant's arrest.

The Sheriff of DeKalb County, Missouri had appellant in his custody on the confidence game charge, but subsequently released him on bail bond being made. The next time he saw appellant was some two months before the instant trial in 1975 when he went to Chicago and took charge of him as the result of extradition proceedings. It is stated in the record that appellant was acquitted of the charge of operating a confidence game.

■ Appellant's first subpoint of Point I is that the trial court erred in finding him guilty of "willfully failing to appear" since there was no evidence of "willfullness." It is argued, citing *United States v. Reed,* 354 F.Supp. 18 (D.C.Mo.1973), that mere proof of nonappearance for trial standing alone is insufficient to establish that a defendant, charged under the federal nonappearance statute, "willfully" failed to appear. Coupled with this argument is the contention that the unsworn statements of appellant's counsel, and the other hearsay statements bearing upon appellant's knowledge of the trial date, cannot be considered. These unsworn statements of counsel and other hearsay statements, were contained in the court's records, offered and received into evidence *without objection.* As noted, it was appellant's own counsel who made the statements to the court, and the quote from *State v. Levy,* 262 Mo. 181, 170 S.W. 1114, 1117 (1914), set forth in *State v. Jacks,* 525 S.W.2d 431, 434 (Mo.App.1975), is applicable to the situation here: " 'Courts are war-

ranted in acting upon the admissions of counsel in the trial of a cause. They are officers of the court, and represent their clients, and their admissions thus made bind their principals.'" The statements of appellant's counsel, and other hearsay statements, being certainly not without probative value on the issue of appellant's actual knowledge of the trial date, being admitted without objection, were in the case for all purposes to be considered by the trial court. *State v. Bradley,* 515 S.W.2d 826, 828 (Mo. App.1974) and cases cited. The argument is without merit, and what has been said disposes of appellant's second subpoint to Point I that the state failed to prove that he had actual notice that he was to appear for trial on May 13, 1974. Buttressing this holding is the additional evidence in the court's record that the clerk mailed a copy of the order setting the case for trial to appellant. This creates a rebuttable presumption that the mailed matter was subsequently received. *Hall v. American Insurance Union,* 27 S.W.2d 1076, 1078 (Mo.App. 1930); *Williams v. Northeast Mutual Insurance Association,* 51 S.W.2d 142, 143 (Mo. App.1932); *State v. Euge,* 349 S.W.2d 502, 506[9] (Mo.App.1961); and *U. S. v. Garrity,* 433 F.2d 649, 652[4] (8th Cir. 1970).

■ As to the state's showing that appellant "willfully" failed to appear for trial, that quoted term was defined in the recent case of *State v. Adams,* 532 S.W.2d 524 (Mo.App.1976), as simply meaning *intentional.* See also 8 C.J.S. Bail § 51(2), p. 150; *People v. McCaughey,* 261 Cal.App.2d 131, 67 Cal.Rptr. 683 (1968); *Parrott v. State,* 522 P.2d 635 (Okl.Cr.1974); *People v. Davis,* 168 Misc. 511, 5 N.Y.S.2d 411 (1938); *United States v. Wetzel,* 514 F.2d 175 (C.A. 8th 1975); *United States v. DuPugh,* 434 F.2d 548 (C.A. 8th 1970); *United States v. Currier,* 405 F.2d 1039 (C.A.2d 1969); *Gant v. United States,* 506 F.2d 518 (C.A. 8th 1974); *People v. Lawson,* 16 Ill.App.3d 61, 305 N.E.2d 594 (1973), construing statutes similar to § 544.665, supra, as to the meaning of "willful." The evidence is sufficient to sustain the trial court's finding that appellant, knowing of the trial setting, intentionally and deliberately failed to appear for trial.

■ Appellant's last point is that the court erred in receiving the testimony of Sheriff Esely that he went to Illinois to pick up appellant in 1975, "and in receiving and considering said evidence as proof of unlawful intent in connection with an offense allegedly occurring May 13, 1974, * *." The court did admit the evidence for the stated reason, "I think the whereabouts of the defendant would go to the question of his intent and willfully violating this provision." In that observation and ruling the court was precisely correct. After failing to appear for trial, appellant continued to absent himself, and never did return to Missouri in any attempt to absolve himself of the charged violation of the statute. His originally formed intent not to show up for trial must be considered to have continued up to the time he was extradited. Analogies are in the cases holding that flight from the jurisdiction is evidence bearing upon the criminal intent of a defendant, done for the purpose of avoiding prosecution. See *People v. Colmey,* 117 App.Div. 462, 102 N.Y.S. 714 (1907); *State v. Foster,* 80 N.H. 1, 113 A. 211 (1921); *Johnson v. State,* 120 Ga. 135, 47 S.E. 510 (1904); *Brown v. State,* 143 Tex.Cr.R. 358, 158 S.W.2d 1018 (1942); and note *State v. Adams,* supra, holding that testimony that defendant was apprehended at O'Hare Airport in Chicago after having failed to appear was deliberate and willful, the result of a plan or design to evade incarceration. Note also *United States v. Dorman,* 496 F.2d 438 (C.A. 4th 1974), holding that where defendant was apprehended beyond the geographical limits of his bond (as is the evidence here) it was evidence of his willful failure to appear; and *United States v. Hall,* 346 F.2d 875 (C.A. 2nd 1965), where fleeing 5,000 miles was held to be evidence that defendant's failure to appear was willful. By reason of the foregoing authorities, appellant's last point is ruled adversely to him.

The judgment is affirmed.

All concur.