THE STATE v. HARRY LEVY, *alias,* Etc., Appellant.

Division Two, November 24, 1914.

1. FORMER CONVICTION: Under Eighteen Years of Age: Evidence. The transcript of the indictment and the judgment showing defendant has been convicted of burglary in another State, is not incompetent on the sole ground that defendant has testified that at the time of his conviction he was under eighteen years of age, and therefore under the laws of this State he could not have been sentenced to the penitentiary. The jury is never precluded by the oral testimony for either the State or defendant, and was not compelled to believe defendant's testimony, though uncontradicted, that at the time of his conviction in that State he was under eighteen years of age . The transcript was competent evidence, and if it be a fact that his serving of a sentence in the penitentiary of another State cannot be considered by the jury under the laws of this State, because at the time of his conviction he was under eighteen years of age, then his testimony raised an issue which could have been dealt with only by instructions.

2. ————: ————: No Instruction: Not Raised By Motion for New Trial. If it be an error of the trial court to fail to instruct the jury that the fact, if it were a fact, that defendant was under eighteen years of age when convicted precludes the jury from considering his said former conviction in another State in assessing his punishment, it was an error of omission to instruct, and in order to be available to defendant on appeal his motion for a new trial should contain a specific assignment that the trial court failed to instruct on the point.

3. ————: ————: Transcript: Not Properly Certified: Untimely Objection. An objection that the transcript of a defendant's conviction in another State is not properly certified and authenticated under the laws of Congress, comes too late, if made for the first time after the transcript was admitted and read into the record. When improper evidence is offered it is the duty of the party who might be injured by .

State v. Levy.

its admission to object specifically then and there by informing the court why it should not be admitted.

4. ———: ———: ———: ———: **Admission of Attorney That Transcript is in Proper Form.**  Besides, if when the transcript of defendant's conviction in another State was offered in evidence his attorney informed the court that it was "in proper form," an objection that it was not properly certified and authenticated under the laws of Congress, made after it was admitted and read into the record, should be disregarded, since an admission made by an attorney in open court during the trial of a cause against the interests of his client is presumed to be true.

5. **ROBBERY: Instruction: Recent Possession.**  An instruction set out in paragraph three of the opinion, on the subject of recent possession of stolen money and the duty of defendant to explain his possession of it, does not assume that the money found in possession of defendant was the identical money stolen from the prosecuting witness, but requires the jury to find that the money found in defendant's possession was recently stolen from such witness before they are permitted to presume that defendant was the party who stole it.

6. **MISCONDUCT OF PROSECUTING ATTORNEY: Statement of Facts Unable to Prove: Cured By Instruction.**  The misconduct of a prosecuting attorney will be weighed in connection with the facts of each case, and when the State's case is weak it will require less misconduct on the part of the prosecutor to work a reversal than where the evidence of defendant's guilt is strong.  Where the assistant circuit attorney in his opening statement of the case against defendant charged with robbery, detailed to the jury certain alleged evidence of attempted bribery of the prosecuting witness, and after his failure to introduce such promised evidence, the court properly instructed the jury to disregard the statements pertaining to such attempted bribery, the evil effect of such unwarranted statement was thereby cured, the evidence of defendant's guilt being satisfactory.

7. **ROBBERY: Money: Coins and Bills: Identification: Presumption Arising From Possession.**  The prosecuting witness, as he boarded a street car, felt "an unusual disturbance" in his trouser's pocket.  Before the car started he discovered his pocketbook was gone, and he immediately got off the car.  A police officer, on the car, saw defendant hurry through the car and get off at the front end, and his suspicions were aroused, and he also got off in time to see defendant board another car going in the opposite direction.  Upon being informed by the prosecuting witness that his pocketbook had been stolen, the officer followed defendant on the next car and overtook

him at a cross street as he was coming towards the car track, and when asked what he was doing there he replied that he had gone to that cross street to see a lumberman, but had failed to find him. There was no lumber yard or office in that part of the city. The prosecuting witness testified that he had in his pocketbook when it was stolen, two twenty-dollar bills, one five-dollar bill and a ten-dollar gold piece dated 1902; also five pennies which he had carried for some time as keepsakes, and that they were dirty and one of them of a dark color. When defendant was searched, in one pocket was found a roll of one-dollar bills "nicely folded," and in another two twenty-dollar bills and one five-dollar bill, not folded, but "all crumpled up," and five pennies of the same color and description as those the prosecuting witness had in his pocketbook. No ten-dollar gold piece was found in his pocket, but when his underclothes were removed a ten-dollar gold piece dated 1902 fell out of them. The police office then went to the cross street where defendant was arrested, and about three hundred feet from where the arrest was made found the empty pocketbook. *Held*, that both coins and bills frequently become so discolored or worn as to give them a peculiar appearance by which they can be identified with reasonable certainty, and the stolen money was sufficiently identified to warrant an instruction on the presumption of guilt arising from possession of recently stolen property.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

AFFIRMED.

*Seebert G. Jones* for appellant.

(1) The court erred in permitting the introduction of illegal testimony and evidence against the defendant. Sec. 6331, R. S. 1909; Sec. 905, U. S. Law, Appendix Mo. Stat. 1909; Barton v. Steel, 65 Mo. 611; Paca v. Dutton, 4 Mo. 371; Moyer v. Lyon, 38 Mo. App. 635. (2) The court erred in permitting the State to offer in the presence and hearing of the jury, illegal evidence against the defendant, and in permitting the assistant circuit attorney to detail before the jury in his opening statement an alleged attempt to bribe the prosecuting witness by a third party, not in any way connected with the defendant. State v. Horton, 247 Mo. 666; State v. Teeters, 239 Mo. 485; State v. Pren-

dible, 165 Mo. 329; State v. Fischer, 124 Mo. 460; State v. Thomas, 99 Mo. 257; State v. Rothschilds, 68 Mo. 52; State v. Daubert, 42 Mo. 242; State v. Marshall, 36 Mo. 400; State v. Schneider, 35 Mo. 533; State v. Wolf, 15 Mo. 160; State v Mix, 15 Mo. 153.  (3)  The court erred in instructing the jury as to the law of the case.  R. S. 1909, sec. 5231; State v. Lackland, 136 Mo. 26; Menteer v. Fruit Co., 240 Mo. 186; Cahill v. Railroad, 205 Mo. 405; State v. Weinhardt, 253 Mo. 629; State v. Heath, 221 Mo. 565; State v. Bidstrup, 237 Mo. 273; State v. Shapiro, 216 Mo. 359.  (4)  The court erred in submitting to the jury the former conviction of defendant because there was no evidence upon which to base it.  State v. Austin, 113 Mo. 542; State v. Shapiro, 216 Mo. 359.

*John T. Barker*, Attorney-General, and *Thomas J. Higgs*, Assistant Attorney-General, for the State.

(1) . The trial court did not commit error in submitting to the jury an instruction on the former conviction of the appellant.  It is argued that at the time the appellant was convicted in West Virginia he was under the age of eighteen years, and that in view of the statutes of this State (Sec. 1529, R. S. 1909), the appellant could not have been sent to the penitentiary. If it be assumed that the appellant testified to the truth and that his age was under eighteen in 1905 when he was convicted in Virginia, still the statute of this State does not exempt one from a penitentiary sentence although he commit the crime when under eighteen years of age.  Under the decisions of this State, if the defendant at the time of trial and the verdict of the jury is under the age of eighteen, the court may delay the judgment and sentence until the defendant is over the age of eighteen, at which time judgment and sentence can be entered of record and the defendant sent to the penitentiary.  Sec. 1529, R. S. 1909; State

v. Townley, 147 Mo. 207. If, at the time the appellant was convicted in West Virginia when he stated he was under the age of eighteen years, he had been convicted in this State of the same crime he could have been sent to the penitentiary, and, therefore, he was guilty of an offense punishable by imprisonment in the penitentiary. (2) A conviction of burglary in West Virginia and a discharge after service of the sentence was shown by competent evidence. It is not necessary to rely upon the record from West Virginia for the proof of the prior conviction of this appellant in West Virginia. The appellant's own testimony sufficiently proves that the appellant was charged with burglary in Ohio county, West Virginia, on March 13, 1905, and that he was convicted, served his sentence and discharged from the penitentiary. This proof is all that is necessary to prove the former conviction, and the former conviction as admitted and proven by the defendant's testimony in every respect coincides with the former conviction alleged in the information. It was further proven that the appellant at that time was going under the name of "Levy" and was convicted under that name. The decisions of this State and the statutes do not require that the former conviction be proven in any particular manner. Although the former conviction in this case was not perhaps proven correctly by the criminal court records of Ohio county, West Virginia, it was proven by the defendant himself. Former convictions can be proven by the testimony and admissions of the defendant. State v. Baldwin, 214 Mo. 302; State v. Court, 225 Mo. 615; State v. Carr, 146 Mo. 4. (3) Improper remarks in the opening statement do not constitute reversible error. This court has been loath to reverse judgments on account of improper remarks of attorneys in the argument when the proof is clear, for the reason that in such cases a verdict of guilty would have been returned regardless of the improper remarks. State v.

Dietz, 235 Mo. 332; State v. Harvey, 214 Mo. 403; State v. Church, 199 Mo. 605; State v. Hibler, 149 Mo. 478; State v. Summar, 143 Mo. 220.    Improper remarks of the State's counsel furnish no ground for reversal where the court withdrew the remarks and instructed the jury to disregard them.  State v. Wright, 141 Mo. 333; State v. Howard, 118 Mo. 145.    Where counsel for the State does not persist in his version of the evidence, but submitted to the court's correction, the judgment will not be reversed.    State v. Kiser, 124 Mo. 651.    (4) There was sufficient evidence of the appellants' possession of recently stolen property to sustain the court in giving instruction number three. Instruction number three, on the subject of a presumption raised on account of the possession of property recently stolen, was proper in form and in accordance with the decisions of this State.    State v. Kelly, 73 Mo. 608; State v. Sidney, 74 Mo. 390; State v. Owens, 79 Mo. 624; State v. North, 95 Mo. 615; State v. Bryant, 134 Mo. 249; State v. Walker, 194 Mo. 253; State v. James, 194 Mo. 277; State v. Hammons, 226 Mo. 604.    The evidence sufficiently proves that appellant had possession of property that was stolen from the prosecuting witness, Dr. Burke.

BROWN, J.—Defendant was charged with stealing a pocketbook containing $61.65 from one Doctor Burke on January 7, 1914, and also with having previously been convicted of the crime of burglary in the State of West Virginia, and, having been found guilty as charged, was sentenced to serve a term of seven years in the penitentiary.  After unavailing efforts to secure a new trial and to arrest the judgment he appeals.

The evidence on the part of the State tends to prove the crime charged against defendant and is substantially as follows:

Defendant was seen standing in front of the union depot in St. Louis, Missouri, a few minutes before

Doctor Burke came out of said depot and attempted to board a northbound 18th street car. Burke was carrying a valise and leading a sick woman, and while on the platform of the car he felt "an unnatural disturbance" in his pants pocket. Before the car started he discovered that his pocketbook was gone and immediately got off the car. Police officer Stinger was on the same car and saw defendant hurry through the car and get off at the front end thereof. This act of defendant aroused the suspicion of the police officer and he also got off the car in time to see defendant board another car going south on 18th street. Upon being informed that Doctor Burke's pocketbook had been stolen the officer followed defendant on the next car and overtook him at 18th and Gratiot street. When first seen at Gratiot street defendant was coming towards the street car track, and when asked by the officer what he had been doing he replied that he had gone to Gratiot street to see a lumberman, but had failed to find him. He was then arrested for the alleged theft of Doctor Burke's pocketbook and brought back to the depot, where he announced that he had plenty of money, but had not taken any from Burke. Burke testified that he had in his pocketbook when the same was stolen two twenty-dollar bills, one five-dollar bill and a ten-dollar gold piece dated 1902; also some smaller change, among which were five pennies that he had carried for sometime as keepsakes; that these pennies were dirty and one of them of a dark color.

At the police station defendant was searched ond in one of his pockets was found a roll of one-dollar bills "nicely folded" and in another pocket was found two twenty-dollar bills and one five-dollar bill, not folded, but all "crumpled up;" also some smaller change, including five pennies of the same color and description as those Doctor Burke had in his pocketbook.

When no gold was found in defendant's pockets he remarked that he had no ten-dollar gold piece, and that Doctor Burke had lied in charging him with taking his pocketbook and money. However, the police officer continued the search and when defendant's underclothes were removed a ten-dollar gold piece fell out of them. This gold piece bore the date of 1902.

The police officer then went back to Gratiot street, where he had arrested defendant, and, about three hundred feet from where the arrest was made, found Doctor Burke's empty pocketbook lying near some piles of lumber.

Defendant testified that he went out on Gratiot street to call on a lumberman for whom he had been selling lumber, but there was no lumberyard or office in that part of the city. Defendant also stated that he recognized the ten-dollar gold piece found in his underclothes as the same coin on which he had made a small mark with an ice pick several months before he was arrested.

The defendant, further testifying in his own behalf, admitted that he had been convicted in Ohio county, West Virginia, of the crime of burglary, and that he had served a term in the penitentiary of that State and had been discharged. He also testified that at the time he was so convicted he was under the age of eighteen years.

To save the space which would be consumed in repeating them, we will note the alleged errors assigned by defendant in connection with the conclusions we have reached.

I. After defendant rested, the State introduced what purported to be a transcript of an indictment presented against defendant in the criminal court of Ohio county, West Virginia, charging him with the crime of burglary, which transcript also embraced a copy of a judgment showing that

Transcript.

he was convicted in said criminal court under the aforesaid indictment. Counsel for defendant objected to the introduction of this transcript on the sole ground that defendant was under the age of eighteen years when said judgment of conviction was entered, and that, under the laws of Missouri, if he had been convicted of committing the same crime in this State while under eighteen years of age he could not have been sentenced to the penitentiary, but would have been sent to the reform school. That, therefore, the conviction in West Virginia could not be made the basis of a charge of former conviction, as provided by section 4914, Revised Statute 1909. The aforesaid transcript was admitted and defendant excepted; the transcript was thereupon read into the record by the circuit attorney. The court did not err in admitting the tanscript over the objection made. There was no evidence of defendant's age before the court except his own testimony, and the jury had the right to disbelieve that evidence if they thought the defendant had testified falsely.

If it is true, as asserted by defendant's learned counsel, that a boy convicted of burglary in this State when under the age of eighteen years cannot be sent to the penitentiary, and that such conviction cannot be treated as a former conviction as defined by section 4914, supra (a point which we need not and do not decide in this case), the defendant's evidence that he was less than eighteen years of age when convicted in West Virginia raised an issue which could only have been dealt with by instructions. If defendant's theory of the effect of his former conviction is correct, then it would have been proper for the trial court to have instructed the jury in substance that although they might find defendant had been convicted of the crime of burglary in the State of West Virginia, if they further found and believed that at the time of such conviction he was under the age of eighteen years, they

should disregard such former conviction in determining the duration of his punishment in this case; and that if they found him guilty of stealing the property of Doctor Burke, as charged in the information, they should fix his punishment at not less than two nor more than five years in the penitentiary. Defendant's attorney insists that because defendant testified that he was under the age of eighteen when convicted in West Virginia and there was no other evidence of his age the court erred in submitting to the jury the issue of his former conviction. In this insistence he is in error, because a jury is never precluded by the oral evidence of either the State or defendant, and may always reject evidence which they do not believe to be true.

The trial court omitted to instruct the jury in regard to the alleged fact that defendant was under eighteen years of age when convicted in the State of West Virginia; hence if it committed any error in that regard (a point which we do not decide) it was an error of omission to instruct, and not an error in any instruction given, consequently such alleged error should have been specifically called to the attention of the trial court in defendant's motion for new trial.

Upon a careful inspection of defendant's motion for new trial we find therein no specific complaint of the failure of the court to instruct upon this point, so that the issue raised, or attempted to be raised, by defendant's testimony that he was under eighteen years of age when convicted in West Virginia is not before us for review, because not mentioned in the motion for new trial. [State v. Conway, 241 Mo. 271; State v. Dockery, 243 Mo. l. c. 599; State v. Sykes, 248 Mo. l. c. 712; State v. Sydnor and Foster, 253 Mo. 375.]

II. After the aforementioned transcript was admitted and read into the record by the circuit attorney, the defendant objected to it on the additional ground

**Objection Too Late.** that it was not properly .certified and authenticated under the laws of the United States, which objection was overruled and an exception saved, which last ruling of the court is now urged for reversal. This insistence cannot be sustained because this objection came too late. When first offered in evidence defendant's attorney informed the court that the transcript was "in proper form." When improper evidence is offered it is the duty of the party who might be injured by its admission to object specifically by then and there informing the court why such evidence should not be admitted. [State v. Pyles, 206 Mo. l. c. 632; State v. Crone, 209 Mo. l. c. 330; State v. Wellman, 253 Mo. l. c. 314.]

An admission made by an attorney in open court during the trial of a cause against the interest of his client is presumed to be true. [Pratt v. Conway, 148 Mo. l. c. 299; Walsh v. Railroad, 102 Mo. 582.] In Pratt v. Conway, supra, Judge GANTT, in speaking for this court, said:

"Courts are warranted in acting upon the admissions of counsel in the trial of a cause. They are officers of the court, and represent their clients, and their admissions thus made bind their principals."

Certainly no court should be convicted of error for admitting and treating a document as properly certified when the complaining party by his own admissions had led the court to believe that it was "in proper form."

III. Defendant also complains of instruction number 3 given by the court of its own motion, on the **Instruction.** ground that it assumes that .the money found in possession of defendant was the identical money recently stolen from Doctor Burke. This instruction reads as follows:

"If you find from the evidence that the money, chattels and personal property or any part thereof

mentioned in the information was stolen from the person of Milton C. Burke, and that recently thereafter such property, or any part thereof, was found in the possession of the defendant, and that the circumstances connected with his possession, when first found in such possession, were of such a character as to demand of him an explanation of his possession, and that he failed to make such explanation in a manner consistent with his innocence, then he is presumed to be the person who stole such property, and this presumption will be conclusive against him unless overcome or repelled by evidence, and the burden is on the defendant to adduce the evidence to overcome or repel such presumption to your reasonable satisfaction, but not beyond a reasonable doubt, unless overcome or repelled by evidence introduced by the State.

"Such possession, to raise the presumption of guilt, must have been personal, recent, exclusive and unexplained and must have involved a conscious assertion of property by the defendant, and if any one of these constituents is wanting, then such possession will not raise the presumption of guilt.

"If at the time the defendant was so found in the possession of such property, or any part of it, he gave an explanation which appears reasonable and probably true and consistent with his innocence, then before you can find him guilty upon a presumption arising from such possession you must find beyond a reasonable doubt that such explanation was false."

We do not think this instruction is subject to the criticism leveled against it. It requires the jury to find that the property found in the possession of defendant was recently stolen from Doctor Burke before they are permitted to presume that defendant is the party who stole the same.

IV. A further assignment of defendant is that the court committed reversible error in permitting the as-

sistant circuit attorney in his opening statement of the
case to detail to the jury certain alleged
evidence of attempted bribery of the
prosecuting witness. Of course, a pros-
ecutor should not in his opening statement refer to
evidence which he cannot legally introduce; but the
trial court could not foresee what the evidence in the
case would be, and after the prosecutor failed to in-
troduce the promised evidence of attempted bribery the
jury were properly instructed to disregard the state-
ments of the prosecutor as to such attempted bribery.
·We think this cured the evil effect, if any, produced by
the misconduct of the prosecutor in mentioning the al-
leged evidence which he was unable to introduce. It is
undoubtedly true that when a prosecutor promises a
jury to place before them certain evidence which he can-
not or does not produce, his failure to make out the case
which he has outlined in his opening statement is liable
to prove a boomerang, so to speak, and lead the jury to
believe that the charge has not been proven.

**Misconduct of Prosecutor.**

If the case was a very close one, and the convic-
tion rested upon testimony that was unsatisfactory, we
might consider this point as worthy of serious consid-
eration, for, as we said in the cases of State v. Hess,
240 Mo. 147, l. c. 160-1; State v. Horton, 247 Mo. 657;
and State v. Baker, 246 Mo. l. c. 376, the misconduct
of a public prosecutor will be weighed in connection
with the facts of each case, and when the State's case
is weak it will require less misconduct on the part of
the prosecutor to work a reversal than where, as in
this case, the evidence of defendant's guilt is very
strong. [State v. Helton, 255 Mo. l. c. 183.] This as-
signment is overruled.

V. Defendant further insists that the evidence in
this case was insufficient to warrant the giving of an
instruction on the presumption of guilt which arises

**Evidence.** from the possession of recently stolen property, citing the case of State v. Sasseen, 75 Mo. App. 1. c. 202. Of course, it is well known that a great number of bills and coins of each series issued by the United States are in circulation among the people, but that fact in this case only goes to the weight to be given to the State's witnesses.

In the case of State v. Griffin, 71 Iowa, 372, there was found in the ice box of the defendant, a saloon-keeper, twenty-five dollars in gold coins of the same denomination as those stolen the day before from one of the patrons of the saloon. In that case the prosecuting witness claimed to be able to identify the coins found in defendant's ice box by a small mark he had placed on them, and on this evidence it was held not error to submit to the jury the presumption of guilt arising from the unexplained possession of recently stolen property.

In the case at bar the minute description given by Doctor Burke of the gold coin and pennies found in defendant's possession, to my mind, points with more certainty to defendant's guilt than did the alleged mark on the coins in the Griffin case, for the reason that experience teaches us that it is quite an unusual thing for anyone to actually mark or deface bills or coins, but both coins and currency frequently become so discolored or worn by usage as to give them a peculiar appearance by which they can be identified with reasonable certainty.

The gold coin found in defendant's underclothes, and which he tried to conceal, bore the same date as the one which was stolen from Doctor Burke, and the pennies found in his possession were dirty, and one of them of a dark color, the same as the five pennies which were taken from the prosecuting witness. The following additional cases tend to support the conclusions we have reached on this point: State v. Newhouse, 115 Iowa, 173; People v. Linn, 23 Cal. 150; People v. Wong

Chong Suey, 110 Cal. 117.   This assignment is also ruled against defendant.

We find no reversible error in the record of this case.   Defendant was represented by resourceful counsel and had a fair trial.   Let the judgment be affirmed.

*Walker, P. J.,* and *Faris, J.,* concur.