Argued March 27, affirmed April 15, petition for reconsideration
denied June 6, petition for review denied June 18, 1974

STATE OF OREGON, *Respondent, v.* GARY
GAIL BENNETT (No. C73-07-2070 Cr), *Appellant.*

521 P2d 31

*Howard R. Lonergan,* Portland, argued the cause for appellant. With him on the brief was A. I. Bernstein, Portland.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant, following his voluntary waiver of a jury, was convicted by the court of first degree burglary, ORS 164.225, and attempted rape, ORS 163.375. He appeals.

He first complains that it was error for the trial court to receive into evidence the result of a polygraph test. The polygraph test was taken pursuant to the following stipulation:

"* * * * *

"The prosecution, by and through James L. Sutherland, Senior Deputy District Attorney, and the defense, by and through Brice L. Smith, with the express consent of the defendant, GARY GAIL BENNETT, hereby agree to and do enter into the following stipulations:

"1. That the defendant will take a polygraph examination to be administered by Lt. Riegel, a qualified polygraph operator for the Oregon State Police.

"2. That the results of the said polygraph examination will be admissible in court in the trial of the above-entitled case.

"3. That this stipulation is contingent upon the defendant's complete cooperation in the polygraph examination, and, if at any time during the examination the examiner determines that the defendant is not fully cooperating, the examination shall terminate and this stipulation shall be void and have no effect whatsoever.

"4. It is further stipulated that if the defendant does not, in the opinion of the polygraph operator, show discrepancies to relevant questions concerning his involvement, the state will dismiss the indictment. If the results on the polygraph are inconclusive, neither side will mention the polygraph examination during trial.

| " _____ | /s/ James L. Sutherland |
| Date | James L. Sutherland |
| " _____ | /s/ Brice L. Smith |
| Date | Brice L. Smith |
| " _____ | /s/ Gary Gail Bennett |
| Date | Gary Gail Bennett" |

The defendant also executed the following:

"CERTIFICATE OF UNDERSTANDING

"I, GARY GAIL BENNETT, certify as follows:

"1. That I have discussed the matter of taking a polygraph examination and the effect of the above stipulation with my attorney, Brice L. Smith.

"2. That I have read and do understand the above stipulation as to the admissibility of the results of a polygraph examination in the trial of the charge of Burglary in the First Degree and Attempted Rape in the First Degree alleged to have occurred on April 30, 1973 at 5112 Northeast Hoyt, Apartment #5, Portland, Oregon, which is currently pending against me in Circuit Court.

"3. I understand that the results of a polygraph examination would not be admissible in a court of law unless I enter into a stipulation regarding their admissibility.

"4. I understand that by taking a polygraph examination I waive my rights to presence of counsel and the right to remain silent. I understand that any statements made by me during the said polygraph examination may be used against me in a court of law.

"I hereby certify that I have read the above stipulation and that I understand the stipulation and agree to its terms.

"Dated: August ___ , 1973.

" /s/ Gary Gail Bennett
⠀⠀⠀⠀Gary Gail Bennett
⠀⠀⠀⠀⠀⠀Defendant"

Following his conviction, defendant filed a motion for a new trial.

Defendant contends in that motion that the trial court, despite the stipulation, should, in effect, on its own motion, have denied all testimony relating to the polygraph test "because they are unsound and unreliable."

■■ Since the challenged testimony was introduced pursuant to the written stipulation and Certificate of Understanding set forth above, we decline to consider the question of its admissibility. The defendant cannot, in a motion for a new trial, challenge testimony the receipt of which was stipulated to by him at the trial. The effect of such a stipulation is an express waiver of any objection. It is not simply a failure to object. To allow a litigant to challenge evidence received pursuant to such a written stipulation would in reality be tantamount to a finding of incompetence of counsel. No such claim is here articulated by defendant. Furthermore, the trial judge, in denying the motion, said:

"* * * I am satisfied that the stipulation was properly entered into by the State and by the defense *and the defendant being represented by competent counsel,* and consequently, the polygraph is appropriately received into evidence. I heard all of the testimony and the evidence in this case." (Emphasis supplied.)

In *In re Herbert D. Black,* 251 Or 177, 191, 444 P2d 929 (1968), a case involving the use of polygraph evidence, our Supreme Court said:

"* * * By considering the evidentiary value of the polygraph test in the present proceeding we do not intend to imply that polygraph evidence is admissible in civil or criminal actions *unless both parties consent to the receipt of such evidence.* * * *" (Emphasis supplied.)

It is clear then that the result of the polygraph test was properly received.

Accordingly, we do not consider defendant's contention that polygraph evidence is "unsound and unreliable."①

The assignment is clearly without merit.

The second assignment challenges the "admission into evidence of another unrelated crime" which was also asserted in the motion for a new trial.

In its carefully considered opinion denying the motion for the new trial, the court said:

"* * * * *

---

① For discussion of this problem, *see* State v. Valdez, 91 Ariz 274, 371 P2d 894 (1962); State v. Ross, 7 Wash App 62, 497 P2d 1343 (1972); State v. Fields, 434 SW2d 507 (Mo 1968); State v. Towns, 35 Ohio App 2d 237, 64 Ohio Op 2d 371, 301 NE2d 700 (1973); People v. Houser, 85 Cal App 2d 686, 193 P2d 937 (1948).

"8. Lieutenant Riegel was called by the State as a rebuttal witness. He described the examination in detail and stated that he formulated and put 12 questions to the defendant. He then testified that he had an opinion that there was a deceptive reaction to two of the 12 questions. The District Attorney then indicated he wished to put additional questions to Lieutenant Riegel. Defense counsel stated that he knew what the questions were, thought they were prejudicial, but acknowledged that Mr. Sutherland (the prosecutor) would have to ask the questions. The problem concerned the defendant's responses to the balance of the questions and whether they could have been influenced by what the District Attorney and defense counsel both referred to as an 'alleged incident' on February 10, 1973, some two and a half months before the instant offense. Defense counsel objected upon the ground that no formal charges had ever ben [sic] preferred against defendant in connection with the former incident; hence, to refer to it would be prejudicial.

"9. I point out here that neither the District Attorney nor Lieutenant Riegel first introduced the possibility of a prior crime into evidence. Defendant's Exhibit #1, a police photograph of the defendant bearing on its back the entry 'Attempted Rape, 1st Degree,' was requested by defense counsel from the District Attorney's file during cross-examination of the first witness in the State's case, the victim, * * * marked as an exhibit at defense counsel's request, and was then offered by him as a defendant's exhibit. At no time in his subsequent testimony in rebuttal did Lieutenant Riegel discuss any details of the 'alleged incident.' Indeed, as noted above, defense counsel made clear that no indictment had resulted.

"10. It was necessary at that point to determine whether the 'prior incident' was relevant and material to the testimony of the expert witness reporting on the results of the polygraph examination.

All of the 12 questions and answers put to the defendant were received in evidence without objection. Lieutenant Riegel was then asked by me whether he could interpret those answers without reference to the prior incident which, incidentally, had been discussed by the defendant with him during the pretest interview, a necessary part of the examination. Lieutenant Riegel replied that he could not. I then ruled that the original stipulation to receive the results of the examination necessarily encompassed receipt of all matters which were relevant and material to interpret those results. Lieutenant Riegel then testified that while deceptive responses were shown as to the remaining questions, he was not wholly satisfied that the defendant's mind was 'cleared' of the prior incident, and hence he could not state that the deceptive responses to the questions concerning * * * [the victim] constituted deception concerning the crime involving her unaffected by the earlier incident.

"11. It was my judgment and remains my judgment that a proper evaluation of the results of a polygraph examination requires the whole picture, not a partial account. The matter of the 'prior incident' came up in the first instance because of the careful professional manner in which Lieutenant Riegel conducted his examination and qualified his testimony. His testimony added no specifics of the earlier incident. The court, as trier of the facts, already had before it the photograph introduced by the defendant bearing reference to a previous charge of Attempted Rape in the First Degree. When a defendant, after careful consideration, elects to waive a jury and try his case to the court, his attorney knowing in advance and having discussed the problems concerning admissibility of evidence with opposing counsel, he must know that the court has to hear the evidence before it can rule upon its admissibility, and it must receive evidence for purposes which are relevant and material. I believe I spelled out clearly, in my written opinion

of September 12, 1973, given two days after the trial, the portions of Lieutenant Riegel's opinion which I considered, which were those two questions as to which he found deception and which were unrelated to the prior incident. The defendant was not 'convicted of another crime,' nor did I give any weight to the fact that some kind of an earlier incident occurred which resulted in no charges, except for the purpose of rejecting any adverse inferences as to the other questions in accordance with Lieutenant Riegel's testimony.

"* * * * *."

■ We agree with the trial court. The evidence of "the other crime" was relevant. *State v. Williams,* 16 Or App 361, 518 P2d 1049, Sup Ct *review denied* (1974). Rather than prejudicial, as defendant contends, it was, if anything, favorable to him when viewed in the light of earlier introduction by the defendant of evidence showing his possible involvement in a similar but unrelated crime occurring about two and one-half months earlier. It was considered by the court, as the trier of fact, only for a proper, limited purpose. *State v. Jackson,* 12 Or App 255, 506 P2d 539 (1973).

This assignment also is without merit.

Affirmed.