STATE of Missouri, Respondent,

v.

Melvin JACKS, Appellant.

No. KCD 27084.

Missouri Court of Appeals, Kansas City District.

March 31, 1975.

Motion for Rehearing and/or Transfer Denied May 6, 1975.

Willard B. Bunch, Public Defender Sixteenth Judicial Circuit, Henri J. Watson, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, for respondent.

Before 'SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

SOMERVILLE, Presiding Judge.

This appeal stems from defendant's conviction by a jury of robbery in the first degree and imposition of a three year sentence.

No claim as to the sufficiency of the evidence having been raised, and no insufficiency appearing, a brief statement of facts will suffice. At approximately 6:30 P.M. on the evening of January 5, 1973, an off-duty detective employed by the Kansas City Police Department was walking to his car parked in a lot behind a tavern. The area was well illuminated by an "arc lamp" affixed to the top of a twenty foot pole. En route thereto the detective was approached by a man of the Negro race carrying a "sawed-off rifle" who demanded his money. Someone standing behind the detective removed his wallet, while the man carrying the "sawed-off rifle" seized his Smith and Wesson revolver. At defendant's trial the detective postively identified defendant as the man carrying the "sawed-off rifle".

Defendant impugns his conviction and sentence on the basis that the trial court

erred (1) in denying him a hearing on his motion to declare a mistrial and discharge the petit jury finally selected to try the case and (2) in not permitting him to introduce testimony at the trial that he agreed to and did submit to a polygraph examination.

After the petit jury was selected, but prior to the time it was sworn to try the case, defendant filed a motion to discharge the petit jury. Defendant alleged therein that the state used its peremptory challenges to strike all Negroes on the venire panel, thus excluding all Negroes from the petit jury, and that the state "systematically did so in case after case", thereby denying defendant equal protection of the law as guaranteed by the Fourteenth Amendment of the Constitution of the United States. The failure of the trial court to grant defendant an evidentiary hearing on his motion is the gravamen of his claim of error on appeal. Defendant relies on Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), as the embarkation point for his position. The venire, from which the petit jury which tried defendant was selected, contained four members of the Negro race. It stands undisputed that the state expended four of its peremptory challenges to strike them and that no member of the Negro race sat on the petit jury which tried and convicted defendant. Their removal by the state in this particular case, standing alone, was not constitutionally impermissible. Swain v. Alabama, supra, (l. c. 837, 85 S. Ct.). However, a systematic exclusion by the state, via peremptory challenges, "in case after case" of members of the Negro race who have been selected as qualified jurors and who have survived challenges for cause, with the result that no Negroes "over a period of time" ever serve on petit juries, presents a Fourteenth Amendment question that takes on "added significance". Swain v. Alabama, supra (l. c. 837, 85 S.Ct). The burden rested upon defendant to prove that selection of the petit jury

in the instant case fell within the foregoing admonition. Swain v. Alabama, supra (l. c. 839, 85 S.Ct.). This reaches the crux of defendant's contention since, for all practical purposes, he claims that if afforded a hearing he could have met the burden of proof imposed by Swain. The record surrounding defendant's motion does not bear out his claim.

Mr. J. D. Williamson, Assistant Prosecuting Attorney of Jackson County, tried the case for the state. Defendant was present in court at all times hereinafter mentioned. After the twelve petit jurors were selected, but prior to the time they were sworn, defendant, through counsel, filed his motion to discharge the jury and requested a hearing thereon. The trial court responded as follows to defense counsel's request for a hearing: "[W]hen you say a 'hearing', I assume the only person you could hear from would be Mr. Williamson." Defense counsel replied he had no desire to question Mr. Williamson as to reasons for striking any particular jurors from the panel, but, instead, would limit his questioning of Mr. Williamson to whether or not he had, in fact, employed part of the state's peremptory challenges to strike all members of the Negro race from the panel in question and whether or not he had done likewise in "case after case" respecting other criminal cases he had tried. Defense counsel then concluded by advising the court "that would be the limit of my questioning". At this juncture, Mr. Williamson stated on the record that in trying criminal cases for the state he had never systematically employed peremptory challenges to strike Negroes or any other classification of individuals, and that "many times" he "had Negroes on juries in criminal cases." Immediately thereafter defense counsel stated "Well, Your Honor, obviously Mr. Williamson is an Officer of the Court and I don't doubt what he just said." The trial judge also made the following statement which appears of record: "I've had a number of jurors, black jurors, serving in cases where there was a black

defendant." Defense counsel further stated on the record that his allegation was that the state "through Mr. Williamson, has engaged in the practice of systematically excluding members of the Black race from sitting as jurors in criminal cases merely because of the race." With the record in the foregoing posture, the trial court overruled defendant's motion to discharge the jury without an evidentiary hearing.

■■■■ It is explicit throughout the record, as evidenced above, that defendant intended to rely solely on questions directed to and answers elicited from Mr. Williamson to meet the burden of proof imposed upon him by *Swain*. The above statements made on the record by Mr. Williamson, if given under oath in response to questions by defense counsel, would have failed to bring the selection of the petit jury which tried and convicted defendant within the constitutionally proscribed area drawn in *Swain*. Defense counsel's statement of record, "I don't doubt what he just said", with reference to Mr. Williamson's statements, can be fairly ascribed as a judicial admission by defense counsel, binding upon defendant, as to the nature and veracity of Mr. Williamson's testimony if questioned under oath by defense counsel. In State v. Levy, 262 Mo. 181, 170 S.W. 1114, 1117 (1914), the court quoted with approval and applied the following principle announced in Pratt v. Conway, 148 Mo. 291, 49 S.W. 1028, 1030 (1899): " 'Courts are warranted in acting upon the admissions of counsel in the trial of a cause. They are officers of the court, and represent their clients, and their admissions thus made bind their principals.' " See also State v. McIntosh, 500 S.W.2d 45 (Mo.App.1973). Basic logic is even more persuasive for binding a defendant as to admissions of counsel in collateral proceedings where neither the proceedings nor the admissions directly relate to the merits of the charge for which a defendant stands accused. While refusal of an evidentiary hearing on a motion such as involved here is not condoned, and the

state's attorney is not clothed with any immunity from being questioned in the limited area prescribed by defense counsel, the latter's admission of record as to the nature and veracity of the statements of record made by the state's attorney precludes denial of an evidentiary hearing in this particular case from constituting reversible error.

Defendant's final assertion of error, that the trial court erred in not permitting him to introduce testimony at the trial that he agreed to and did submit to a polygraph examination, is also ruled adversely to him. This assertion is silhouetted by the following facts. Prior to trial defendant and the state jointly executed a written "stipulation" providing that defendant would submit to a polygraph examination to be administered by Corporal Merle Buesing of the Missouri State Highway Patrol. The "stipulation", inter alia, provided as follows: "It is further agreed and stipulated that the results of the polygraph examination, in the form of an opinion, may be offered in evidence on behalf of the defendant, or on behalf of the prosecution without objection by either, provided that if the polygraphist determines that the results of said examination are indefinite and/or inconclusive then the polygraphist will not be required to testify nor will the examination results be introduced by either the prosecution or the defendant." Pursuant to the "stipulation", and after being given a Miranda warning, defendant submitted to a polygraph examination conducted by Corporal Buesing, the results of which were "inconclusive". The conditions under which defendant took the polygraph examination, his voluntary submission thereto, the Miranda warning given, and the "inconclusive" result of the examination, were all disclosed by interrogation of Corporal Buesing under oath outside the presence of the jury. On the basis of the facts disclosed the trial court ruled that both the results of the polygraph examination and the fact that defendant submitted thereto were inadmissible. Defense counsel then

made an offer of proof—that Corporal Buesing and defendant would both testify, if permitted to do so, that defendant, after being given a Miranda warning, voluntarily agreed to and did submit to a polygraph examination—which was denied on the state's objection.

In State v. Cole, 354 Mo. 181, 188 S.W.2d 43 (1945) this state firmly committed itself to the proposition that results of polygraph examinations are inadmissible in evidence because they lack scientific support for their reliability. This commitment has been consistently adhered to: State v. Stidham, 305 S.W.2d 7 (Mo. 1957); and State v. Weindorf, 361 S.W.2d 806 (Mo.1962). State v. Bibee, 496 S.W.2d 305, 316 (Mo.App.1973), constitutes well reasoned authority for the proposition that an accused's offer or professed willingness to submit to a polygraph examination is, likewise, inadmissible because it is "merely a self-serving act or declaration which obviously could be made without any possible risk, since, if the offer were accepted and the test given, the result, whether favorable or unfavorable to the accused, could not be be given in evidence." In State v. Fields, 434 S.W.2d 507 (Mo.1968) the court, absent consideration of whether the results of polygraph examinations have any scientific support for their reliability, held that if an accused stipulates to submit to such an examination and agrees that the result, favorable or unfavorable, is admissible at trial, then he has effectively waived all objections as to admissibility. In view of the stipulation in the instant case, and the holding in State v. Fields, supra, the results of the polygraph examination which defendant submitted to, if conclusive, would have been admissible whether favorable or unfavorable to defendant. For this reason defendant contends his actual submission to the examination transcends the holding in State v. Bibee, supra, excluding admissibility of a mere offer or proffered willingness to submit to such an examination, because he took all attendant risks, and, figuratively speaking, should be entitled to reap a reward for having done so. While innovative, to say the least, defendant's argument does not "score" for the basic and fundamental reason that to date the case law of this state still remains committed to the proposition that the results of polygraph examinations are inadmissible because they lack scientific support for their reliability. Expressed in conventional legalese, results of polygraph examinations have no probative value because they lack scientific reliability. If the results lack probative value, then mere submission to a polygraph examination, with the result kept from the jury, has even less probative value. Perforce, the trial court did not err when it refused to permit defendant to introduce evidence that he agreed to and did submit to a polygraph examination.

Judgment affirmed.

All concur.