**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Roscoe Junior GHAN,
Defendant-Appellant.**

**No. 10410.**

Missouri Court of Appeals,
Springfield District.

Sept. 22, 1977.

Motion for Rehearing or to Transfer
Denied Oct. 13, 1977.

Application to Transfer Denied
Nov. 14, 1977.

---

**2.** See *State v. Vermillion,* 486 S.W.2d 437, 440[5–8] (Mo.1972).

John D. Ashcroft, Atty. Gen., Walter O. Theiss, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Lloyd R. Henley, Springfield, for defendant-appellant.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

BILLINGS, Chief Judge.

Defendant Roscoe Junior Ghan was convicted by a Greene County jury of first-degree robbery by means of a dangerous and deadly weapon. In this appeal he claims the court erred in admitting polygraph evidence and challenges the validity of the stipulation under which the evidence was admitted and the qualifications of the polygraph examiner. He also avers the court erred in failing to give a jury instruction, jury misconduct, and that the evidence was not sufficient to support the verdict. We affirm.

Shortly after midnight, July 18, 1975, a man entered the Quick Shop Market at 1349 South Glenstone in Springfield, Missouri. He was armed with what appeared to be a .45 caliber automatic pistol and demanded that store clerk Danny Griffin give him all the money in the cash register. The store was well-lighted and the incident lasted nearly six minutes. Upon leaving, the man entered a car occupied by two people, one male and one female. Approximately a week later, Griffin viewed a group of photographs at the police station and selected defendant's picture. Sometime later at a line-up, Griffin identified defendant as the person who robbed him.

Pursuant to a written stipulation entered into by defendant, his counsel and the prosecuting attorney before trial, defendant submitted to a polygraph (lie detector) examination. The stipulation provided that the polygraph examiner was an expert, that the results would be admissible on behalf of the state or defendant, and that defendant waived his constitutional privilege against self-incrimination in connection with the polygraph examination.

The first test was inconclusive, although there was a "lean toward deception." A second test administered to defendant indicated he was deceptive. After a hearing, the judge overruled defendant's motion to suppress the test results from evidence. At trial, the examiner was permitted to testify to the results of the examination over the defendant's objection.

Defendant avers that it was error for the trial court to overrule his motion to suppress and to admit the polygraph evidence because it lacks the level of scientific approval required of judicial evidence, an objection not specifically waived by defendant in the stipulation.

Ever since *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923) when a court first rejected lie detection evidence because the technique was not shown to have general scientific acceptance in its field, courts have struggled with the problem of admissibility of such evidence. Some courts admit polygraph results into evidence absent a stipulation provided certain conditions are met. *United States v. Ridling*, 350 F.Supp. 90 (E.D.Mich.1972); *Commonwealth v. A Juvenile*, 365 Mass. 421, 313 N.E.2d 120 (1974); *State v. Dorsey*, 87 N.M. 323, 532 P.2d 912 aff'd. 88 N.M. 184, 539 P.2d 204 (1975).

Other courts exclude polygraph evidence even though the parties have stipulated to its admissibility. *People v. Liddell*, 63 Mich. App. 491, 234 N.W.2d 669 (1975); *Fulton v. State*, 541 P.2d 871 (Okl.Cr.1975); *Romero v. State*, 493 S.W.2d 206 (Tex.Cr.App.1973); *Pulakis v. State*, 476 P.2d 474 (Alaska 1970). The reason for the exclusion is the unreliability of such evidence and a stipulation for admission would not increase the reliability. *Pulakis v. State, supra.*

Of the courts considering the issue a majority have held that the results of polygraph examinations are admissible at trial upon the stipulation of the parties. *People v. Davis*, 270 Cal.App.2d 841, 76 Cal.Rptr. 242 (1969); *State v. Towns*, 35 Ohio App.2d 237, 301 N.E.2d 700 (1973); *State v. Galloway*, 167 N.W.2d 89 (Iowa 1969); *State v. Woo*, 84 Wash.2d 472, 527 P.2d 271 (1974); *State v. Jenkins*, 523 P.2d 1232 (Utah 1974); *State v. Valdez*, 91 Ariz. 274, 371 P.2d 894 (1962); *State v. Stanislawski*, 62 Wis.2d 730, 216 N.W.2d 8 (1974); *State v. Steele*, 27 N.C.App. 496, 219 S.E.2d 540 (1975); *State*

*v. McDavitt*, 62 N.J. 36, 297 A.2d 849 (1972); *State v. Lassley*, 218 Kan. 758, 545 P.2d 383 (1976); *State v. Bennett*, 17 Or.App. 197, 521 P.2d 31 (1974); *People v. Oswalt*, 26 Ill.App.3d 224, 324 N.E.2d 666 (1975); *State v. Stewart*, 364 A.2d 621 (N.H.1976); *Codie v. State*, 313 So.2d 754 (Fla.1975); *Banks v. State*, 351 N.E.2d 4 (Ind.1976); *United States v. Oliver*, 525 F.2d 731 (8th Cir. 1975), cert. denied 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976).

■ In Missouri, by stipulation of the parties, polygraph evidence is admissible in a criminal trial. *State v. Fields*, 434 S.W.2d 507 (Mo.1968); *State v. Faught*, 546 S.W.2d 515 (Mo.App.1977). Otherwise, the results of polygraph examinations are excluded because they lack scientific support for their reliability. *State v. Weindorf*, 361 S.W.2d 806 (Mo.1962); *State v. Cole*, 354 Mo. 181, 188 S.W.2d 43 (1945); *State v. Jacks*, 525 S.W.2d 431 (Mo.App.1975).[1]

While it may not be as specific as the one in *State v. Fields, supra*, defendant after consultations with and warnings by his retained counsel, signed a stipulation agreeing that the results of the polygraph examination would be admissible in evidence. From the testimony at the suppression hearing it is apparent to have been a strategy calculated by defendant to show his innocence and get the robbery charges against him dismissed. While he knew he did not have to take the test, defendant requested he be given a polygraph exam. He indicated he was aware that the results could be used against him. Defendant read the stipulation when he signed it, and at the hearing admitted there was nothing in it he did not understand.

■ Defendant's strategy backfired, and now he seeks to escape the stipulation by raising the scientific reliability objection. There was no failure by the state to fulfill its part of the bargain—defendant's only complaint is that his hoped for result was destroyed by the test. Defendant cannot

---

1. It is somewhat misleading to cite *State v. Jacks* for this proposition because the court, in excluding the results of the polygraph exam, was specifically enforcing the stipulation of the parties, which provided that inconclusive test results would not be admissible. 525 S.W.2d at 434.

challenge testimony, the receipt of which was stipulated by him. Failure to include a waiver of scientific objection will not invalidate the stipulation and allow defendant to raise the objection now. By requesting and agreeing to take the test and stipulating that the results would be received into evidence, defendant waived his objections to admissibility. *State v. Lassley*, 218 Kan. 758, 545 P.2d 383 (1976); *State v. Bennett*, 17 Or.App. 197, 521 P.2d 31 (1974).

■ In another attack upon the admission of the polygraph evidence, defendant claims that his constitutional privilege against self-incrimination and his right to due process were violated because he was not fully advised of his constitutional rights.

The United States Supreme Court, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), said the Fifth Amendment privilege against self-incrimination applies when an accused is forced to provide the state with evidence of a testimonial nature as opposed to his being the source of real or physical evidence such as blood samples and voice samples for identification. In *Schmerber*, the court indicated that polygraph evidence could be considered as falling under the testimonial evidence category and entitled to Fifth Amendment protection.

"Some tests seemingly directed to obtain 'physical evidence,' for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial. To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment." 384 U.S. at 764, 86 S.Ct. at 1832.

Recent cases, noting that a polygraph test cannot be administered without the full cooperation of the defendant, have stated that the taking of the examination is tantamount to a waiver of constitutional rights if adequate warnings are given as to the pos-

sible use of the test. *United States v. Oliver*, 525 F.2d 731 (8th Cir. 1975), cert. denied 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976); *United States v. Ridling*, 350 F.Supp. 90, 97 (E.D.Mich.1972); *State v. Steele*, 27 N.C.App. 496, 219 S.E.2d 540 (1975).

In this case, defendant's constitutional privilege against self-incrimination was not violated, nor was there a denial of due process. Defendant was not compelled to submit to the polygraph. He wanted to take the test; the initial request came from him. Defendant had the assistance of retained counsel who advised him not to submit to the polygraph if there was a possibility defendant might fail. He knew of his privilege against self-incrimination prior to taking the exam and knew he did not have to take the test. Defendant signed a stipulation specifically waiving his privilege against self-incrimination. He and his attorney went over the document, with his counsel explaining the polygraph results could be used in evidence. The trial court in overruling the motion to suppress the polygraph evidence questioned defendant about his rights. Defendant understood the statements in the stipulation. The examiner went over the polygraph technique and reviewed all questions with defendant, and defendant and his attorney agreed to questions. Defendant was adequately advised of his rights and the consequences of the polygraph, and made a voluntary and intelligent waiver. The point is denied.

■ Defendant next asserts that the document he signed before submitting to the polygraph examination does not qualify as a stipulation because it was executed before the felony information was filed and was without court supervision and approval or valid consideration. In his motion for new trial, defendant did not challenge the validity of the stipulation; he only raised the issue of lack of consideration. When a point is not raised as error in defendant's motion for new trial, it is not properly preserved for appellate review. *State v. Nolan*, 423 S.W.2d 815, 817–18 (Mo.1968); *State v. Webb*, 544 S.W.2d 53 (Mo.App. 1976); Rule 27.20(a), V.A.M.R.

Considering the lack of consideration, under Missouri law, a stipulation imports an agreement based on consideration. *Goldstein v. Goldstein*, 237 Mo.App. 274, 165 S.W.2d 876 (1942). The general rule is a promise by one party is sufficient consideration for a promise by the other party. *Mohawk Real Estate Sales, Inc. v. Crecelius*, 424 S.W.2d 86 (Mo.App.1968). Defendant understood that if he passed the test "I'd be out of jail by the next day." Further, the agreement provided that either side could use the polygraph evidence and if the charge was pursued, defendant had the opportunity, if the results were favorable to him, to present evidence which would otherwise be inadmissible. There was adequate consideration for the stipulation.

Defendant contends that it was error for the court to refuse to give his Instruction A, cautionary in nature, instructing the jury not to attach "too much weight to the polygraph tests because of its atmosphere of scientific acceptability." The court did give Instruction 9, which was offered by defendant.

The weight to be given testimony is particularly within the province of the jury, with which the court is not to interfere. *State v. Ball*, 262 S.W. 1043 (Mo.1924). The jury is free to give whatever weight it sees fit to a test introduced into evidence. *Hurley v. Illinois Central R. Co.*, 221 Mo.App. 478, 282 S.W. 97 (1926). As pointed out in the Notes on Use (2) under MAI–CR, 2.01, "Except as may be specifically provided for elsewhere in MAI–CR, no other or additional instruction may be given on the believability of witnesses, or the effect, *weight or value* of their testimony." (Emphasis added). Therefore, defendant's requested instruction would *not* have been *proper* because it invaded the province of the jury.

Even if defendant's Instruction A had been a proper instruction, it was cautionary in nature, and the giving or refusal of a cautionary instruction is always discretionary with the trial court. *State v. Bibbs*, 461 S.W.2d 755, 760 (Mo.1970); *State v. Peterson*, 546 S.W.2d 175, 181 (Mo.App. 1976). Where the court has fully and properly instructed on a subject, there is no error in refusing further instructions on the subject. *State v. Degraffenreid*, 477 S.W.2d 57 (Mo.banc1972); *State v. Peterson, supra*. By Instruction 9, the court told the jury that the polygraph examination was not sufficiently reliable to make such tests admissible without a stipulation, and that the tests' reliability depended primarily on the examiner's skill and the defendant's health condition. In determining the reliability of the tests, the jury was instructed it must find beyond a reasonable doubt that the examiner was skillful and his technique was proper and that defendant's health condition did not affect the tests. The jury was adequately cautioned on the polygraph evidence and there was no error in refusing to instruct jury as requested by defendant.

The next point raised by defendant is that the polygraph examiner should not have been permitted to testify because he did not possess sufficient qualifications to testify as a polygraph expert.

The qualifications of an expert in a criminal trial is a matter resting primarily within the sound discretion of the trial court and will not be overturned on appeal absent abuse of discretion which is prejudicial to the defendant. *State v. Williams*, 515 S.W.2d 463 (Mo.1974); *State v. Hindman*, 543 S.W.2d 278, 284 (Mo.App. 1976). Due to the substantial bearing the expertise and technique of the polygraph operator-interpreter have on the reliability of the polygraph test, expert testimony concerning the results demands more than minimal qualifications.

Here, the polygraph operator had been on the Springfield police force eight years and his job was polygraph examiner. He was trained at Baxter School of Lie Detection—associated with New York State University—having 216 hours of initial classroom training. Further, he had one year of internship training and had continuing education in polygraph by attending seminars. The examiner had conducted between 400 and 450 polygraph examinations. Although he did not have a college degree,

the examiner had completed 87 hours of college work in law enforcement at Drury College. He does not appear to be any less qualified than other polygraph experts who have been permitted to testify.[2] The trial court was satisfied with the witness's qualifications and there does not appear to be any abuse on its part in admitting his testimony. The point is denied.

 Defendant complains that the jury did not decide the issue of guilt before considering the punishment as directed by the instructions. This is inferred from the jury's asking the trial judge, before indicating it had reached a verdict, whether they could assess punishment at less than five years. Again, this issue was not raised in the motion for new trial and was not objected to during the trial. The point is not preserved for appellate review. *State v. Nolan*, 423 S.W.2d 815 (Mo.1968); *State v. Webb*, 544 S.W.2d 53 (Mo.App.1974). Rule 27.20(a), V.A.M.R.

This brings us to defendant's final argument. He challenges the sufficiency of the evidence to support a judgment of conviction.

In deciding the sufficiency of the evidence, the appellate court's review is limited to whether there is substantial evidence to support the jury's verdict. *State v. Eaton*, 504 S.W.2d 12 (Mo.1973); *State v. Kellick*, 521 S.W.2d 166 (Mo.App.1975). Substantial evidence is evidence from which the triers of fact reasonably could find the issues in harmony therewith. *State v. Taylor*, 445 S.W.2d 282 (Mo.1969). Facts and evidence and favorable inferences therefrom, supporting the convictions are considered, and evidence and inferences to the contrary are disregarded. *State v. Strong*, 484 S.W.2d 657 (Mo.1972); *State v. Kellick, supra*.

There was substantial evidence to support the jury's verdict in this case. The store clerk who was robbed was able to observe the man robbing him at gunpoint for approximately six minutes in a well-lighted store. He described in detail the man's movements in the store during the incident. Twice, before trial, the clerk made a positive identification of the defendant as the man who robbed him, once approximately a week later while viewing photographs at the police station and again during a line-up sometime later. Positive identification by the eyewitness constitutes substantial evidence of the guilt of the defendant. *State v. Cannon*, 486 S.W.2d 212 (Mo.1972); *State v. Bibee*, 496 S.W.2d 305, 316 (Mo.App.1973). Any discrepancies in the description and identification were for the jury to resolve. *State v. Carey*, 486 S.W.2d 443 (Mo.1972); *State v. Taylor*, 456 S.W.2d 9 (Mo.1970).

The judgment is affirmed.

All concur.

---

**2.** In *State v. Fields*, 434 S.W.2d 507 (Mo.1968), the expert had over six years work experience in polygraph, received instruction at a school affiliated with New York University and at the Highway Patrol laboratory, and had conducted 1000 exams. There was no indication whether he had a college degree, any internship training or continuing education.