**Junior Eugene NEWMAN,
Plaintiff-Respondent,**

v.

**STATE of Missouri,
Defendant-Appellant.**

**No. 12184.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 17, 1982.

Motion for Rehearing or Transfer
Denied July 7, 1982.

John Ashcroft, Atty. Gen., Brian P. Seltzer, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

Patricia A. Patten, Law Offices of Jerry E. Wells, Joplin, for plaintiff-respondent.

PER CURIAM.

In this postconviction proceeding under Rule 27.26, Mo.R.Crim.P. (11th ed. 1980), petitioner Junior Eugene Newman sought to withdraw a plea of guilty to second-degree murder entered August 14, 1979, in the Circuit Court of Jasper County. The trial court heard evidence, considered the record made when the plea was accepted, and found that "the [petitioner] was motivated by a misunderstanding of the law concerning the admissibility of . . . polygraph evidence; that this misunderstanding was a major factor in his decision to enter a plea of guilty, and [was] of sufficient importance to render the plea involuntary." Petitioner was permitted to withdraw his plea; the sentence imposed upon the plea was vacated. The State appeals. The meritorious question presented is whether the petitioner had effective assistance of counsel prior to the entry of the plea of guilty.

Petitioner was originally charged with capital murder, as defined and denounced by § 565.001, RSMo 1978, in connection with the death of Burnal Ray Brown on October 16, 1978. Petitioner's brother Jack was tried and found guilty of first-degree murder in causing Brown's death in the

perpetration of a robbery. Jack's punishment was assessed at imprisonment for life and his conviction was affirmed by our Supreme Court. *State v. Newman,* 605 S.W.2d 781 (Mo.1980). The case report—and presumably the transcript—show that Junior was present when Brown was killed, but does not indicate complicity on his part.

After Jack was tried, Junior and his counsel planned to proceed to trial. Junior decided a polygraph test would demonstrate his innocence. Being advised by his counsel that the result of a polygraph test was admissible only if the parties stipulated it might be received in evidence, Junior and his counsel entered into a stipulation with the State that the result might be received in evidence upon his trial. The test indicated deception on Junior's part. Thereafter, counsel advised Junior to enter into a plea bargain and plead guilty. He did so, and received a 25-year sentence.

One of the several attorneys who represented Junior, Mr. Norman Rouse, was asked if he had advised his client against submitting to a polygraph test. Mr. Rouse told the petitioner "I thought he probably shouldn't take it." Nevertheless petitioner "was adamant" because he "felt that he was telling the truth and that the lie detector test would clarify him—would clarify it." This attorney was further asked: "Did you advise Junior Newman of the Law of the State of Missouri at the time? A. Yes. Q. And what was your advice to him? A. It was my opinion at that time that the lie detector test could be admitted if it was stipulated to by both parties." After the test was administered, Mr. Rouse did considerable research "as to challenging, even after stipulation, a polygraph test." He concluded there was only a "small possibility" that his objections would be sustained.

Another attorney who represented Junior, Mr. Mike Garrity, was asked if in his opinion the advice he gave Junior concerning the admissibility of the results of a polygraph test was in essence the best advice available; he was permitted to answer "yes" without objection. Mr. Garrity also testified that the State's plea bargain offers became more lenient after the polygraph test was administered.

This court ordered supplementation of the record in order to examine the transcript made when the plea of guilty was received. At the time this plea of guilty was received, the duty of a trial court was prescribed by an order of our Supreme Court dated February 22, 1972, and that court had suggested a procedure to be followed. *Flood v. State,* 476 S.W.2d 529, 535–536 (Mo.1972) (Donnelly, J., concurring); Bench Book for Missouri Trial Judges, §§ 17.11, 17.12 (1974). Our inspection of this transcript indicates that when the trial court inquired about a factual basis for the plea, the State indicated it intended to rely upon the polygraph test, but the transcript also shows that having satisfied the requirements of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the trial court went into great detail to determine whether the plea was voluntary. The following questions are illustrative:

"Q. Is there anything in the explanation of your rights on the questions asked by this Court that you do not understand?

A. No, sir.

Q. Is there anything that you wish to have explained to you, Mr. Newman?

A. No, Your Honor.

Q. Do you feel that you have gotten all the information that you need through your attorneys and through this proceeding here?

A. I do, Your Honor."

* * * * * *

"Q. And again I don't want to belabor the point, Mr. Newman, but you have discussed this plea with your attorneys, have you not—

A. Yes.

Q. —fully? Do you feel that you have had sufficient time to discuss your case before you came in here today?

A. Yes.

Q. At this point, is there any desire on your part to talk to your lawyers any further before we proceed?

A. No, Your Honor."

* * * * * *

In our view, the transcript demonstrates the plea was knowingly and voluntarily made, unless counsel was remiss in failing to anticipate our Supreme Court's ruling in *State v. Biddle*, 599 S.W.2d 182 (Mo.banc 1980), wherein that court held that the results of polygraph examinations are inadmissible as evidence in a criminal trial notwithstanding stipulations because the results of such examinations are scientifically unreliable.

■ When a plea of guilty has been entered, the adequacy of representation is immaterial unless counsel was so incompetent that the plea was not entered voluntarily and with understanding of the nature of the charge. *Rice v. State*, 585 S.W.2d 488, 493[1] (Mo.banc 1979). Reasonably competent counsel, doing reasonable research in 1979 would have found that after rejecting polygraph tests in 1945 and 1962, our Supreme Court suggested that a stipulation waiving " 'relevancy, materiality, competency, *accuracy*, constitutionality, reliability, and any and all objections of any nature [to the admission of a polygraph test]' " would probably make the result of a polygraph test admissible. *State v. Fields*, 434 S.W.2d 507, 513–514 (Mo.1968). Counsel would have found the decision of this court in *State v. Ghan*, 558 S.W.2d 304, 307 (Mo.App. 1977), indicating that by stipulation of the parties, polygraph evidence is admissible in a criminal trial, and *State v. Faught*, 546 S.W.2d 515, 516[1] (Mo.App.1977), indicating the same view. If counsel consulted local periodical comment, he would have found commentary indicating that a written stipulation would permit reception of the results of polygraph tests. Note, Judicial Acceptance of Results of Scientific Evidence—The Paraffin Test and the Polygraph, 34 Mo.L. Rev. 592 (1969). And he would have found a decision of the United States Court of Appeals for the Eighth Circuit indicating that court took *Fields* to mean that upon stipulation of the parties, the prosecution might offer the results of a polygraph test in evidence. *United States v. Oliver*, 525 F.2d 731, 736, n. 8 (8th Cir. 1975), cert. denied 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976).

■ Our courts have held that the professional performance of a lawyer is not ineffective for failure to anticipate changes in the law affecting a criminal defendant's rights. *Larrabee v. State*, 616 S.W.2d 542 (Mo.App.1981); *Benson v. State*, 611 S.W.2d 538, 544[5, 6] (Mo.App.1980). In this case, the petitioner would require his counsel to anticipate resolution of a disputed legal question which the momentarily controlling precedents seemed to have settled. Counsel's failure to anticipate the decision in *Biddle, supra*, is an example of "ineffectiveness by hindsight," which should not afford a basis for collateral relief. *Alfano v. United States*, 555 F.2d 1128, 1131[4] (2d Cir. 1977). With deference to the trial court, we find its conclusion clearly erroneous in this case.

Pro se, the petitioner has cited us to the decision of the United States Court of Appeals for the Eighth Circuit in *Fields v. Wyrick*, 682 F.2d 154 (1982), (reh. and reh. in banc denied May 28, 1982), in which that court granted collateral relief from this court's decision in *State v. Fields*, 538 S.W.2d 348 (Mo.App.1976), on the grounds that the defendant's *Miranda* waiver did not extend to inculpatory statements made after a polygraph test had been administered. We have read the opinion, but because the results of Junior's polygraph test was not received in evidence, the citation is wholly inapt.

For the reasons noted, the judgment of the trial court is reversed and the sentence imposed in Cause Number 73626 in the Circuit Court of Jasper County, styled State of Missouri v. Junior Eugene Newman, is reimposed.

PREWITT, P. J., and BILLINGS and MAUS, JJ., concur.